## WORTH *v.* CHICAGO, M. & ST. P. RY. Co.

(*Circuit Court, N. D. Iowa.* July 9, 1892.)

CARRIERS—INJURY TO PASSENGERS—ADMISSIBILITY OF EVIDENCE.

> In an action for injuries caused to a passenger by the derailing of a car, defendant introduced evidence tending to show that the derailment was caused by a tie in the frog of a switch; that shortly before the accident four persons were seen upon the track in the vicinity, who seemed to avoid meeting another person walking along the track; that in the neighborhood was the camp of certain persons who had been employed in repairing the tracks, but who had been discharged, causing ill feeling. *Held*, that it was competent to further prove that two of these persons had shortly before made threats against the company, and that one of them had said he would ditch the train. *Miller* v. *Railroad Co.*, (Or.) 26 Pac. Rep. 75, distinguished.

At Law. Action by Mrs. William Worth against the Chicago, Milwaukee & St. Paul Railway Company to recover damages for personal injuries. Verdict for defendant. The case is now heard on motion for a new trial. Denied.

*Rickel & Crocker* and *Charles C. Clark,* for plaintiff.

*Mills & Keeler,* for defendant.

SHIRAS, District Judge. The plaintiff herein was a passenger upon a train upon defendant's road, going eastward from Council Bluffs, Iowa,

and which was derailed at the point where the track crosses the Coon river; and this action was brought to recover for the injuries caused thereby to the person of plaintiff. The fact of the derailment of the train was not disputed, the company claiming, however, that such derailment was due, not to any negligence on its part, but to the fact that a tie was placed by some third person or persons in a frog upon the track, for the purpose of wrecking the train. Upon the trial, evidence was introduced tending to show that a tie had been placed in a frog near the bridge crossing the Coon river; that the frog was located near a camp occupied by persons who had been employed in making repairs upon the roadbed; that shortly before the accident, which occurred after dark, four persons were seen upon the track in the neighborhood of the bridge; that these persons seemed to avoid meeting another person, who was walking along the track; that a few days before the accident several of the men employed upon the track had been discharged, causing ill feeling on their part; that within 36 hours of the accident two of these parties had uttered threats,—the one, that the company would "catch hell;" the other, that unless he was paid at once "he would ditch the train." The court charged the jury that if the train was derailed through the act of some third party in placing an obstruction upon the track, and the company had observed due care in patrolling the track, and was not therefore in fault in not having discovered the obstruction, the company would not be liable to the passenger. The verdict of the jury was in favor of the defendant, and plaintiff now moves for a new trial, on the ground that the court erred in admitting the evidence regarding the threats made by the discharged employes of the road.

Counsel for plaintiff, in their brief and argument, cite but one case in support of the proposition that the court erred in admitting the testimony in question; that being *Miller* v. *Railroad Co.*, (Or.) 26 Pac. Rep. 75, in which it was held that in a suit for injuries caused by the derailment of a train through a misplaced switch, evidence of the conviction of one Hill in a criminal proceeding for disarranging the switch, and of confessions made by him, were inadmissible. The judgment in the criminal proceeding was clearly *res inter alios acta;* and therefore not competent evidence for either party in the civil suit for damages, and the confession made by Hill would, as against the company, be merely a recital or statement of a past event, not under oath, and hence the evidence of such statement was merely hearsay, and therefore not competent. In the case at bar the evidence admitted was not a statement or recital of a past event, but was a declaration tending to show a then existing state of mind; or, in other words, tended to show a hostile and revengeful state of feeling on part of the discharged employes towards the railway company. Under the instructions of the court to the jury the defendant was bound not only to show that the train was derailed by the presence of a tie or other like obstruction in the frog, but also that the same was placed there intentionally by some third party. If the defendant had rested the case with evidence showing that the train was derailed by an obstruction at the frog, the argument would have

been pressed with great force that the jury could not assume that the tie was thus placed there intentionally, and with the fell purpose of throwing the train from the track, and that, in the absence of evidence tending to show such a motive or purpose, the jury would be bound to infer that the obstruction was not put upon the track intentionally. This evidence was of the same nature as that showing that persons acting in a suspicious manner had been seen in the immediate vicinity of the accident shortly before it happened. The fact that counsel for plaintiff, not only at the trial, but upon the motion, so strenuously contend against the admission thereof, shows that they appreciate the effect of the evidence and recognize its probative force, and the question is reduced, therefore, to the single proposition of its competency, its materiality being practically admitted.

The position taken by the defendant on the trial was that the train had been wrecked through the intentional wrongdoing of a third party, and to sustain this defense evidence was introduced tending to show that the train had been derailed by an obstruction in the frog; and to prove that this had been intentionally placed in the frog, evidence showing the position of the obstruction was given, tending to show that it required human agency to so place it, and it was then shown that there had been difficulty between the company and persons employed in repairing the track, leading to the discharge of some of the latter, thus creating ill feeling towards the company; that two of the persons discharged had made the threats admitted in evidence shortly before the accident, and that on the evening of the accident four persons had been seen on the track close to the place where the train was derailed, who acted suspiciously; and upon these facts, thus linked together, the company rested this defense. If evidence of the other facts in this chain of circumstances was admissible (and the contrary is not contended) no good ground is perceived why the fact of the threats made should alone be excluded. It is the fact that the threats were made that was proven, and why this fact could not be proved, as well as any and all other facts bearing upon the question, is not made apparent.

The objection urged in argument of counsel for plaintiff, that great injustice might result if such evidence is held to be competent, is no more applicable to testimony of this nature than to any other fact proved as one of many circumstances relied on in establishing a given case or defense. Its truth or falsity, as well as its probative weight, is for the jury to determine. It is also said that a threat to do an act in the future is not proof that the person will in fact do the act threatened. It may not be proof conclusive, but it may be evidence competent to be considered with other facts in determining the question. Thus, if the two persons who had made the threats in question had been charged, either civilly or criminally, with the tort of having wrecked the train, can it be questioned that on the trial of the case evidence of the threats made by them would have been competent as tending to show their complicity in the wrong done? When the same issue of fact was made in this case, why were not all facts competent in the supposed case

competent in this? . If these parties at the time of the accident had formed the intention of wrecking the train, such intention would be a material fact upon the question whether the train was accidentally or intentionally derailed, and what better evidence of a party's intention can be introduced than his declaration thereof? *Insurance Co.* v. *Hillmon*, 12 Sup. Ct. Rep. 912. This was an action brought to recover upon a policy issued upon the life of John W. Hillman, who it was claimed was killed by an accidental discharge of a gun; but upon the part of the company it was claimed that the body produced as that of Hillman was not so in fact, but was that of one Walters, who had been killed when accompanying Hillman in a trip through southern Kansas. The question whether Walters had in truth left Wichita in company with Hillman was one of the disputed matters in the case, and upon this point the court held that letters written from Wichita by Walters to his friends in Iowa, stating his purpose to go with Hillman, were admissible, as being evidence of his intention at the time of writing them, "which was a material fact bearing upon the question at issue." After the best reflection I have been able to give to the case, I remain of the opinion that the evidence excepted to was rightfully admitted, and hence the motion for new trial is overruled.