THE STATE *vs.* JOHN HAWLEY.

New Haven & Fairfield Cos., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, BALDWIN and J. M. HALL, Js.

The defendant was on trial for the murder of a Mrs. Munson and an important part of the defense was that his wife committed the murder. Held that evidence was admissible on his part that she had said to him—"If you don't keep away from there I will break your head and Mrs. Munson's too."

The threat here was not an isolated matter, but was admissible as a link in a chain of circumstances tending to connect the wife with the crime.

The case distinguished from that of *State* v. *Beaudet*, 53 Conn., 536.

The judge in admitting the evidence remarked, in view of that case, that "he was inclined to think he was overruling the Supreme Court." Held that this remark tended to weaken the force of the evidence with the jury, and in view of its importance and of the magnitude of the case, it was regarded as a sufficient ground for granting a new trial.

The true question for the jury upon this part of the case was not whether they were satisfied that the wife committed the murder, but whether there was such evidence tending to connect her with the crime as would raise a reasonable doubt whether the prisoner committed it.

The court said to the jury—" If the prisoner is entitled, as he certainly is, to be presumed innocent until upon a full and impartial trial he has been proved guilty beyond a reasonable doubt, ought his wife to be presumed guilty when she has had no trial at all and no opportunity to offer a word in her defense ? " Held to have been harmful to the prisoner as calculated to make the impression that in the judge's mind the guilt or innocence of the wife was an important issue in the case, and that they were to convict the prisoner unless satisfied that she was guilty.

And held that an allusion of the judge to Adam's attempt to throw the blame of his misconduct upon Eve, was injurious to the prisoner, as implying that the prisoner like Adam was guilty.

[Argued March 9th—decided April 7th, 1893.]

INDICTMENT for murder; in the Superior Court in Fairfield County. Tried to the jury on the plea of not guilty, before *Fenn, J.* Verdict guilty, and appeal by the defendant for errors in the rulings and charge of the court. The case is fully stated in the opinion.

*W. H. Williams,* with whom was *W. S. Downs,* for the appellant.

*S. Fessenden,* State's Attorney, for the State.

CARPENTER, J. The prisoner was indicted for the murder of Mary L. Munson. The evidence against him on the trial was circumstantial. Among other things there was evidence tending to show that he was in a position in which he might have committed the murder. His wife, Flora Hawley, was also indicted, in a separate indictment, for the same offense. The defense claimed that she also was in a position in which she might have committed the murder.

On the trial the accused was introduced as a witness in his own behalf. After he had been cross-examined, his counsel, on the re-direct, asked him—" Hadn't your wife said anything about Mary Munson, threatening her, anything of that kind ? " This was objected to. It was admitted for the purpose of showing that his wife, previous to the day of the murder, suspected that he had had improper relations with Mrs. Munson, but was excluded for any other purpose,

especially for the purpose of proving threats. Thereupon, among other things, the witness stated that "she told me if I didn't keep away from there she would break my head and Mrs. Munson's too.

In the afternoon of the next day the court, referring to the foregoing objection and admission of evidence under the ruling, stated to counsel for the accused, in the presence of the jury—"On reflection, Mr. Williams, although I am inclined to think I am doing what I was unable to do yesterday, overruling the Supreme Court, in view of your claim on which the jury will pass, as to actual suspicion against this woman, I will admit without restriction any such evidence you may have, and you may call Hawley or any other witness for that." But counsel offered no other or further evidence on this subject, saying that as the testimony was in it was not necessary to repeat it.

The reference in the expression, "overruling the Supreme Court," was to the case of *State* v. *Beaudet*, 53 Conn., 536. Upon the authority of that case it seems that the court below at first excluded evidence of threats, but afterwards admitted it in the manner stated. We do not think that case can be regarded as an authority for excluding evidence of threats under the circumstances of this case. In that case the prisoner was on trial for an assault with intent to murder. The assault took place in the dining room of the house of Dr. Zink, the person assaulted, a few minutes after eleven o'clock at night. It appeared that one Dougherty was in a saloon in the vicinity that evening until half past ten o'clock, intoxicated. A witness was asked "whether Dougherty upon that night in that saloon, between the hours of half past nine and half past ten, made any threats against Dr. Zink?" And another witness was asked "whether, on the day before the assault, Dougherty in his hearing made any threats against Dr. Zink?" Both questions were excluded by the court, and that ruling presented the only question for review. The court, by LOOMIS, J., said:—"At the outset it should be noticed that the offer was simply to prove the threats of Dougherty against Dr. Zink. Any threats of

any kind would have filled the offer.  What act Dougherty
threatened to do, or when or how he was to do it, was not
indicated; nor was the offered evidence accompanied with
any claim, or even a hint, that it could or would be supple-
mented by further testimony.  Indeed, it nowhere appears
in the record that it was even claimed in behalf of the pris-
oner that Dougherty committed the offense or that any evi-
dence admitted or to be offered would show it.  The threats,
whatever they were, so far as appears were entirely isolated
from the transaction in question, and tended in no way to
elucidate or give character to any material act or fact in the
case.  They could not therefore have been received as parts
of the *res gestæ.*"  Again: " We insist therefore that it is
reasonable to exclude the mere disconnected threats and dec-
larations of third persons.  If they are parts of the *res gestæ*,
or form links in a chain of evidence connecting with the
crime itself, they may doubtless be received."

These two quotations indicate clearly the ground on which
the evidence was excluded and the ruling vindicated.  The
reasoning of the court and the authorities cited in an
elaborate and exhaustive opinion, serve at once to fortify the
position of the court, to point out the distinction between
that case and this, and to define and limit the scope of the
decision.

In this case the threat was not an isolated, independent
transaction.  On the contrary it was a link in a chain of
circumstances which the counsel for the accused might with
propriety claim connected Mrs. Hawley with the crime itself.
We think therefore that the accused was entitled to this tes-
timony.  The testimony was in fact in, and was for the jury
to consider.  The only question is whether it was in under
such circumstances that the accused had the full benefit of
it.  If, in receiving it, the remark of the court about " over-
ruling the Supreme Court," caused the jury to believe, or
left the impression on their minds, that the presiding judge
did not regard the evidence as admissible, then it did have
a tendency to weaken the force of the evidence, and to a
considerable extent.  That being so, it is probable that the

jury did not give it the weight they otherwise would, nor the weight it was fairly entitled to.

The fact that the jury were so long in reaching a verdict, even going so far as to report to the court that it was not probable that they could agree, is entitled to some consideration. It is impossible now to say that the diminished force of this evidence was not the turning point in the case.

On the whole, in view of the magnitude of this case, and of the strong probability that the remark of the judge was prejudicial to the accused, we feel constrained to hold that it is a sufficient cause for a new trial.

No complaint is or can be made of the law relating to criminal homicide as given to the jury by the court, nor in the main to its application to the facts of the case. And that is true of the closing part of the charge, in which the whole case is submitted to the consideration of the jury, with the instruction that they are the judges of the law as well as of the facts. Indeed the whole charge is one of singular ability, and, with one exception now to be noticed, is characterized by manifest fairness and impartiality.

The exception alluded to is as follows: " There is one matter, however, to which I think it is my duty before closing to somewhat more specially allude. Much has been said in behalf of the defense, certainly with great ability, but perhaps with more zeal than proper caution, about Flora Hawley. She has been called, and declared to be, the real murderer, and with dramatic action pointed out to you, as she sat in the court room, as such. Now, while, as I have already said to you, and repeat here, using the exact language of our Supreme Court, it is the right of the prisoner to exculpate himself by showing the fact of another's guilt, by some proper evidence directly connecting that person with the act, while it is his privilege to show that another might have committed the crime for the purpose of showing thereby that he might not have committed it, beyond that he is not permitted and ought not to be permitted to go. As the court well says, the very investigation of such an issue serves greatly to confuse and mislead the triers and excite prejudice,

and justice may thereby be defeated; and if the jury were to pass on the collateral issue it would have no other effect than to acquit the one on trial; the other person would be in no wise legally affected; though it does not follow that such person would not be otherwise seriously affected, and his or her chances of a fair and impartial trial thereafter seriously impaired, by public opinion, and prejudice thereby created. The person so accused has no opportunity to meet the accusation when made. Such person is not a party in court, and has no right or opportunity to explain and defend. If therefore, John Hawley is entitled, as he certainly is, to be presumed innocent until, upon a fair, full and impartial trial he has been proved guilty beyond a reasonable doubt, ought Flora Hawley to be presumed guilty when she has had no trial at all and no opportunity to say a word or offer a word in her own defense? And when counsel, on whom nature, with her other rich gifts, has also bestowed a somewhat vivid and picturesque imagination, has asked you to see Flora, with a pistol in her pocket, steal carefully into that house, going out of it to burn her blood-stained garments, you ought, I think, in simple justice to one whose mouth the law has not unsealed, to ask yourselves whether there is any more proof that Flora ever had a pistol than that the prisoner had, or whether there is any proof at all that she ever burned any clothing, or that she was ever in that house that evening, in which John Hawley admits that he was until nine o'clock or thereabouts. If Flora Hawley was on trial before you, as John Hawley is and she is not, how long would you hesitate on the evidence before you, and with no opportunity on her part to add to it, in rendering your verdict, and can there be any doubt as to what that verdict would be? Surely the man whose infidelity to his marriage vows furnishes the only motive which he can suggest for the crime, should not, and the counsel who acts in his behalf should not, be allowed to go beyond, in the scope of his argument, the limit of his facts, when he charges his silent wife with the awful murder of his mistress. I sometimes think the disposition of our first male ancestor to charge the fault up-

State v. Hawley.

on the woman given to him, did not die with Adam, but was inherited by his descendants. Victims of man's lust and violence, he also casts over their shoulders the mantle of his shame."

It seems to us that the evidence tending to connect Flora Hawley with the commission of the crime was not submitted to the jury just as it ought to have been. The jury may have understood from the charge that, in order to have that evidence avail the accused, it was necessary that they should be satisfied beyond a reasonable doubt that she was guilty of the offense; whereas the true question we think is whether there is such evidence *tending* to connect her with the crime as will raise a reasonable doubt whether John Hawley was guilty. That, and not whether Flora Hawley was guilty, was the material question in this part of the case for the jury to determine.

The point decided in the case of *State* v. *Beaudet* was that *mere* threats by Dougherty against Dr. Zink were inadmissible. In establishing that proposition the court pointed out certain circumstances in which threats and similar evidence might be admissible; for instance, that guilt in another might be shown, and that threats, if a part of the *res gestæ*, or if forming a link in a chain of evidence connecting a third person with the crime, would be admissible. The court below, it seems, assumed that unless the evidence offered came within some of the specified exceptions it was inadmissible; that is, the court by implication decided that evidence tending to prove another guilty, but not amounting to full proof, even though it might raise a reasonable doubt, could not be received. We believe that to be a mistaken view of the case. It carries the doctrine of the decision far beyond the scope of the facts and the intention of the court. That opinion does not purport to be exhaustive, and surely it could not have been intended to decide a point like this by implication.

An analysis of the charge will show pretty clearly that the court below interpreted that case as excluding evidence of threats of Flora Hawley, unless such evidence in connec-

State v. Hawley.

tion with other proof amounted to full proof of her guilt; or, at least, that the jury so understood it.

On that theory the remark of the judge when he finally admitted evidence of threats—that he was inclined to think he was doing what he was unable to do the day before, "overruling the Supreme Court," is explainable. For, taking that view of that case, the admission of that evidence was inconsistent with it; but regarding that case as deciding that evidence of mere threats, unaccompanied with other evidence of guilt, was inadmissible, leaving it an open question whether when such evidence taken in connection with other proof was sufficient to create a reasonable doubt of the guilt of the accused, might not be admissible, there was no inconsistency.

The court told the jury—"It is the right of the prisoner to exculpate himself by showing the fact of another's guilt, by some proper evidence connecting that person with the act." If the court had stopped there the jury certainly would have understood the law to be that nothing short of full proof of Flora's guilt would avail the defense. But the court immediately follows with this language: "While it is his privilege to show that another might have committed the crime for the purpose of showing thereby that he might not have committed it, beyond that he is not permitted and ought not to be permitted to go." That might materially qualify the preceding sentence were it not for what follows.

The court then proceeds to consider the effect of such an issue, (the guilt or innocence of Flora Hawley,) and the effect of the verdict if the jury should pass upon the evidence, —that it might acquit John Hawley, but could have no legal effect upon Flora Hawley, although it might prejudice her cause and prevent her from having a fair trial. In the next paragraph the court, in effect, told the jury that Flora Hawley, as well as John Hawley, is entitled to the presumption of innocence until proved guilty. The language is—"If therefore John Hawley is entitled, as he certainly is, to be presumed innocent until, upon a fair, full and impartial trial, he has been proved guilty beyond a reasonable doubt, ought

Flora Hawley to be presumed guilty when she has had no trial at all, and no opportunity to say a word or offer a word in her own defense?" What would the jury be likely to understand from that? Surely that in the mind of the judge the guilt or innocence of Flora Hawley was an important issue in this case. The danger is that they understood further that they must convict John Hawley unless the evidence satisfied them that Flora Hawley was guilty; thus converting the legal presumption of Flora Hawley's innocence into a presumption of John Hawley's guilt.

But passing to the next paragraph. The court says:— "If Flora Hawley was on trial before you, as John Hawley is and she is not; how long would you hesitate on the evidence before you, and with no opportunity on her part to add to it, in rendering your verdict? And can there be any doubt as to what that verdict would be?" Here again, and all through this paragraph, the idea is kept distinctly and prominently before the jury that the guilt of Flora Hawley must be proved before any evidence tending to criminate her could be of any benefit to her husband.

We pause to observe that it has not escaped our notice that, even if the view taken by the court below was correct, this part of the charge was objectionable as being argumentative on a pure question of fact, and that too against the prisoner. The charge does not purport to state the claim of counsel for the state, but is apparently an argument by the court, which could not fail to have a powerful influence with the jury. The most zealous advocate for Flora Hawley could not have argued the case in her behalf more effectively. As to the merit of the argument, aside from its ability, we have nothing to say; but when we consider that it tended strongly to convict John Hawley, we fear that there is too much reason for the criticism of the prisoner's counsel, that the court "intimated its opinion to the jury upon the questions of fact involved in the trial, and upon claims in behalf of the accused as to such questions of fact."

Moreover, the charge seems to be in violation of the spirit of the statute § 1630, which is as follows:—" The court shall

state its opinion to the jury upon all questions of law aris-
ing in the trial of a criminal cause, and submit to their con-
sideration both the law and the facts, without any direction
how to find their verdict." The jury may have taken this
part of the charge as an intimation that they should find on
this question of fact against the prisoner.

But to return. We are forced to the conclusion that the
court misconceived the legitimate force and effect of the tes-
timony which tended to incriminate Mrs. Hawley. The ev-
idence against the prisoner was circumstantial. One circum-
stance was that he was in a position in which he might have
committed the crime. To weaken the force of this circum-
stance the defense attempted to prove that Mrs. Hawley was
also in a position to do it, accompanied with evidence that
she had threatened to do it, and other evidence which they
claimed proved that she had a motive for doing it, and there
was also evidence of some circumstances which had more or
less tendency to prove that she did in fact do it.

The primary object of this testimony was, not to prove
the guilt of Flora Hawley, but to disprove the guilt of John
Hawley. If it raised a reasonable doubt of his guilt it ac-
complished its object. Now had that evidence been sub-
mitted to the jury in that form, and for that simple purpose,
all that part of the charge we are now considering would
have been inapplicable and inappropriate, and the evidence,
under proper instructions, would have had its legitimate ef-
fect. Instead of that the evidence was so submitted to the
jury that it may have given them the impression that its
only purpose and object was to prove the guilt of Mrs. Haw-
ley. And when they saw from the charge that, in the
opinion of the court, it failed to prove that, they probably
dismissed it altogether, thus practically eliminating it from
the case. It requires no argument to show that the course
taken may have been, and probably was, very damaging to
the defense.

There is one aspect of this case that perhaps we ought to
notice in this connection. It may be that guilt lies between
John and Flora Hawley. If both are not guilty it may be

State *v.* Hawley.

difficult to ascertain which one is. The court below manifested a commendable solicitude lest justice might ultimately be defeated, and lest Flora Hawley's right to an impartial trial might be unduly impaired. We desire simply to say that we believe it is possible, and entirely feasible, to give to each of the suspected parties a fair and impartial trial, giving to each every advantage which by law he or she is entitled to. The state cannot afford to convict, even the guilty, except by the well-established rules of law. It is not so important to convict *somebody* as it is that the guilty only, and not the innocent, should be convicted.

The reference in the charge to Adam seems to us to involve an intimation, somewhat obscure perhaps, that the court regarded John Hawley as guilty. Such an intimation in a capital case is a just cause of complaint. If not made on the assumption of guilt, then the cases are not parallel. Adam and Eve were both guilty. Adam, confessing his guilt, sought to escape responsibility by casting blame on Eve.

In this case it may be assumed that one is guilty and that the other is not. The innocent one may with propriety claim that the other is the guilty one. When John Hawley is on trial he is entitled to make this defense, as much so as he would have been if the other suspected party had been a stranger instead of his wife. We fear that the only effect of the reference was to excite in the minds of the jury a prejudice against the accused. If so, who can say that he was not injured thereby?

We feel constrained to hold that there is error, and that the accused is entitled to a new trial.

In this opinion the other judges concurred.