### GREEN *v*. THE STATE.

[No. 19,205. Filed May 29, 1900.]

CRIMINAL LAW.—*Indictment.*—*Homicide.*—An indictment charging defendant with killing his wife by wounding her with a revolver loaded with gunpowder and leaden ball, which revolver he "then and there held in his hands, and discharged at, against, and into the person" of the deceased, is sufficiently certain to show that the revolver was fired, and not thrown as a missile from the hand of defendant. *pp. 656, 657.*

SAME. — *Evidence.* — *Declarations of Deceased.*— *Res Gestae.*—*Homicide.*—In a trial for murder, evidence that when the shot was fired deceased staggered back about five feet, dropped the baby she was holding in her arms, sank upon her knees and exclaimed that her husband had shot her, was admissible as part of the *res gestae*. *pp. 657, 658.*

SAME.—*Evidence.*—*Dying Declarations.*—Proof that declarant was under the sense of speedy and certain death may be afforded by circumstances, even in the absence of any direct statement to that effect by the declarant. *p. 658.*

SAME.—*Evidence.*—*Dying Declarations.*—Where the court in a murder trial admitted in evidence the dying declaration of the deceased

that her husband shot her, the declarant's statement that she was mortally wounded and must die was admissible in order that the jury might know all of the surrounding circumstances so as to determine what credit should be given to the declaration. *pp. 658, 659.*

CRIMINAL LAW.—*Evidence.—Dying Declarations.—Impeachment.*— Where in a prosecution for murder the State introduced in evidence the dying declaration of deceased that defendant shot her, the defendant was entitled to prove that deceased made statements, during the two weeks she languished from the wound, contradictory to the dying declaration proved by the State, as an impeachment of the dying declaration. *pp. 659, 660.*

SAME.—*Evidence.—Admission of Guilt by Another.*—Evidence in a murder trial tending to prove that a person other than defendant, subsequent to the homicide, admitted her guilt was not admissible. *pp. 660, 661.*

SAME.—*Evidence.—Dying Declarations.—Impeachment.*—Where in a murder trial the State introduced in evidence the dying declaration of deceased, that defendant, her husband, shot her, and showed that the shot was fired from a small caliber revolver, that the assassin had on a man's attire, including a long overcoat, and spoke in an assumed voice that sounded as much like a woman's as a man's, and defendant introduced another dying declaration of the deceased that a certain named woman was the assassin, the defense was entitled to prove that such woman a few days before the murder took a small caliber revolver to a gunsmith to be repaired, and got the revolver on the day of the murder, and that on the evening of the murder she left her house, disguised as a man, with a man's overcoat on, and went in the direction of the house of deceased. *pp. 660-664.*

EVIDENCE. — *Phases of the Moon. — Quantity of Light. — Expert Testimony.*—It was proper in a murder trial to show the phase of the moon and the condition of the atmosphere on the night of the tragedy, but the opinion of an expert witness as to the quantity and quality of the light was inadmissible. *p. 664.*

From the Clark Circuit Court. *Reversed.*

*L. A. Douglass* and *H. W. Phipps,* for appellant.
*H. C. Montgomery* and *B. Traylor,* for State.

BAKER, C. J.—Appellant was convicted of murdering his wife. He complains of the overruling of his motion to quash the indictment, and of the refusal to grant him a new trial.

It is urged that the indictment fails to show, with sufficient certainty, the means by which the mortal wound was

inflicted. The indictment avers that appellant killed Lizzie
Green by wounding her "with a certain dangerous and deadly
weapon, to wit, a revolver then and there loaded with gun-
powder and leaden ball, which revolver he, the said George
Green, then and there had in his hands and discharged at,
against and into the person of the said Lizzie Green," there-
by inflicting a mortal wound of which she died. The un-
certainty is said to arise over the question whether the
deceased was struck with the revolver or the leaden ball
with which the revolver was loaded. Appellant relies upon
the case of *Littell* v. *State*, 133 Ind. 577. The indictments
are not exactly parallel; but, if they were, the method of
criticism employed in Littell's case is too fanciful and
strained to be accepted as a precedent. Compare *Keyes* v.
*State*, 122 Ind. 527, and *Bass* v. *State*, 136 Ind. 165. To
discharge a loaded revolver does not mean to throw the
revolver as a missile from the hand, but to free the revolver
of the missile with which it is loaded, by firing.

Moran, father of deceased, testified that between 8 and
9 o'clock in the evening he was at his daughter's house
with her and her infant children; that some one outside
called "O, Mis' Lizzie Green, come out, I want to see you;"
that his daughter with a babe in her arms stepped to the
door and asked "who are you;" that the person shot, and
witness heard the sound of retreating footsteps. Question.
"Now what did she do when the shot was fired?" Answer.
"She halloed 'O Lord—.'" Defendant objected to any-
thing she said, on the ground that it was not part of the
*res gestae*. The court overruled the objection, and the de-
fendant excepted. Q. "Now go on, Uncle." A. "She
said 'O Lord, George has shot me!'" Motion to strike out,
overruled, exception. On cross-examination, the witness
said that when the shot was fired his daughter staggered
back about five feet, dropped the baby on the bed which
stood near the door, and sank upon her knees, before making
the above exclamation. No motion to strike out was predi-

cated on the cross-examination. But whether the exclamation was made at the door or by the bed, it was plainly the event speaking through the wounded person and not the wounded person giving an account of a past occurrence. In all cases such as this, it is obvious that the shot has been fired and the principal act is at an end from the standpoint of the assailant, before the assailed can make any declaration. The admission of the declaration depends upon its being so connected in time and circumstances with the principal act that the assailed appears to be the spontaneous spokesman of the act and not the deliberate utterer of an afterthought. Gillett Ind. & Col. Ev. Ch. IX; *Binns* v. *State,* 57 Ind. 46, 26 Am. Rep. 48; *Jones* v. *State,* 71 Ind. 66; *Louisville, etc., R. Co.* v. *Buck,* 116 Ind. 566, and cases cited on page 576; *Hall* v. *State,* 132 Ind. 317; *Parker* v. *State,* 136 Ind. 284; *Shoecraft* v. *State,* 137 Ind. 433.

A dying declaration in which Mrs. Green stated that appellant was the person who shot her was admitted in evidence over appellant's objection. It is contended that the proof was not clear that the declarant was under the sense of certain and speedy death. Such proof is necessary, but it may be afforded by circumstances, even in the absence of any express statement to that effect by the declarant. Gillett Ind. & Col. Ev. §§195-197. The declaration in question was made the night before Mrs. Green died. The witness testified that the declarant said she knew she could not live long; and that declarant seemed to be very weak and "had to stop between her talk." The declaration was reduced to writing and signed. It contained these statements: "I realize that I must die—that I am mortally wounded. * * * I say, as I am about to die, that George Green shot me." All of this evidence was first for the court to hear in determining the admissibility of the declaration; it was competent; it was uncontradicted; and its sufficiency was such as to satisfy the court that the declaration should be admitted. No error appears in the ruling. Gillett Ind.

& Col. Ev. §202. Appellant also urges that the court should have excluded from the jury the declarant's statement as to her sense of her impending death. After the court had decided that the declaration as to the slaying and the slayer was admissible, the jurors were entitled to know all of the circumstances surrounding the declarant in order to determine what credit should be given to the declaration. Gillett Ind. & Col. Ev. §203. Appellant further objects to the declaration because it does not fix the date of the tragedy. The occasion was amply identified.

Appellant was permitted to prove a dying declaration in which Mrs. Green stated that Clara Brown was the person who shot her. Appellant offered to prove statements, made by deceased at various times during the two weeks she languished from the wound, that were contradictory to the dying declaration proved by the State, and to the effect that the fatal shot was fired by Clara Brown. The State objected because the preliminary proof showed that the offered statements were neither part of the *res gestae* nor dying declarations. Appellant was entitled to this evidence as an impeachment of the dying declaration introduced by the State. Gillett Ind. & Col. Ev. §204; *People* v. *Lawrence,* 21 Cal. 368; *State* v. *Lodge,* 9 Houst. (Del.) 542, 33 Atl. 312; *Morelock* v. *State,* 90 Tenn. 528, 18 S. W. 258; *Carver* v. *United States,* 164 U. S. 694, 17 Sup. Ct. 228, 41 L. ed. 602; 10 Am. & Eng. Ency. of Law (2nd ed.), 384. Inasmuch as a defendant has no opportunity at the trial to have a cross-examination as to the subject-matter of the dying declaration, it would be most unjust to deprive him of the right of impeachment by contradictory statements; and the right would be lost to him, if he were required to lay the usual foundation for that kind of impeachment. But the State claims that appellant had the benefit · of the contradiction by proving the dying declaration that inculpated Clara Brown. That declaration was primary and direct evidence in favor of appellant, and its admission

was not at all dependent upon the introduction of the other dying declaration by the State. True, the one dying declaration contradicts the other. But the same is true of much direct evidence of litigants. And the fact that one party has direct evidence that is in conflict with his adversary's does not curtail his right to discredit his adversary's direct evidence by impeachment.

The mortal wound was inflicted with a bullet from a small-caliber revolver. Moran, the deceased's father, testified that he did not recognize the voice of the person who called his daughter to the door; that it did not sound like a man's voice nor like a woman's, but seemed to be feigned. In her dying declaration introduced by the State, Mrs. Green said her assailant had a man's hat pulled down over the eyes and wore a long overcoat. Appellant, after introducing the dying declaration that named Clara Brown as the assassin, offered to prove that Clara Brown a few days before the murder took a small-caliber revolver to a gunsmith to be repaired; that she got the revolver from the smith on the day of the murder; that she asked the smith if the revolver was in perfect repair and would snap a cartridge every time. Appellant offered to prove by a neighbor of Clara Brown that a few days before the murder Clara Brown said to the witness that she was jealous of Charlie Mitchem and Lizzie Green, that she did not intend to have Charlie Mitchem going around with Lizzie Green, that she would kill her, and that the way she would kill her would be to fix herself up to look like a man, go to her house after dark, call her out, and shoot her when she came to the door; that, about 7:15 o'clock on the evening of the murder, witness saw Clara Brown leave her house, disguised as a man, with a man's hat and a man's overcoat on, and go off in the direction of the home of Lizzie Green, which was about a mile from the house of Clara Brown. Appellant further offered to prove by the same witness that on November 20, 1898, the day after the assault, Clara Brown said

to the witness that the person who shot Lizzie Green did not get her this time, but would the next. The tendency of the last offer is to prove that Clara Brown, subsequent to the shooting, admitted her guilt. Such evidence is not admissible. Gillett Ind. & Col. Ev. §227; *Bonsall* v. *State*, 35 Ind. 460; *Jones* v. *State*, 64 Ind. 473, 485. The overt acts of Clara Brown, offered to be proved by the gunsmith and the neighbor, were admissible in connection with the evidence already before the jury. The State had shown that the shot was fired from a small-caliber revolver; that the assassin spoke in an assumed voice that sounded as much like a woman's as a man's; and that the assassin had on a man's attire, including a long overcoat. The dying declaration introduced by the defense was direct and primary evidence that Clara Brown was the assassin. In this state of the evidence, appellant was entitled to prove that Clara Brown had had a small-caliber revolver repaired and that it was received into her possession shortly before the murder, and that in the evening of the tragic day she was seen to leave her home, disguised as a man, wearing a man's hat and long overcoat, and go in the direction of Lizzie Green's. What Clara Brown said to the gunsmith in having the revolver repaired was admissible as explanatory of that act. And, although threats of a third party against the deceased are not competent in and of themselves (*Jones* v. *State*, 64 Ind. 473; *Walker* v. *State*, 102 Ind. 502), yet, there being evidence pointing directly to Clara Brown as the guilty person, appellant should have been permitted to show that she had a motive and the disposition to commit the crime. Gillett Ind. & Col. Ev. §§228, 276, 278; Underhill Crim. Ev. §332; *State* v. *Hawley*, 63 Conn. 47, 27 Atl. 417; *Commonwealth* v. *Abbott*, 130 Mass. 472; *Commonwealth* v. *Trefethen*, 157 Mass. 180, 31 N. E. 561, 24 L. R. A. 235; *State* v. *Davis*, 77 N. C. 483; *Murphy* v. *State*, 36 Tex. Crim. R. 24, 35 S. W. 174; *Worth* v. *Chicago, etc., R. Co.*, 51 Fed. 171; *Alexander* v. *United States*, 138 U. S. 353,

11 Sup. Ct. 350, 35 L. ed. 954; *Mutual Life Ins. Co.* v. *Hillman,* 145 U. S. 285, 12 Sup. Ct. 909, 36 L. ed. 706. In *State* v. *Hawley, supra,* it was said: "In this case the threat was not an isolated, independent transaction. On the contrary it was a link in a chain of circumstances which the counsel for the accused might with propriety claim connected Mrs. Hawley with the crime itself." The court held in *Commonwealth* v. *Abbott, supra:* "It was clearly competent for the defendant to prove that he did not commit the murder, by showing that some other person did; and, as one step towards that end, he had a right to prove such a state of ill feeling on the part of the husband, existing at the time of the homicide, as would furnish him with a motive for the commission of the crime." In Trefethen's case, the defense was that the deceased had committed suicide by drowning. The evidence against the defendant was circumstantial. There was the fact of death by drowning, but no evidence of a struggle or any violence. Held, that the declaration of deceased, made the day before her death, that she intended to drown herself, was admissible. In *Worth* v. *Chicago, etc., R. Co., supra,* the threats of third parties to do the act for which the defendant was sought to be held liable, were admitted. "The position taken by the defendant on the trial was that the train had been wrecked through the intentional wrong-doing of a third party, and to sustain this defense evidence was introduced tending to show that the train had been derailed by an obstruction in the frog; and to prove that this had been intentionally placed in the frog, evidence showing the position of the obstruction was given, tending to show that it required human agency so to place it, and it was then shown that there had been difficulty between the company and persons employed in repairing the track leading to the discharge of some of the latter, thus creating ill feeling towards the company; that two of the persons discharged had made the threats admitted in evidence shortly before the accident, and that on the evening of the accident

four persons had been seen on the track close to the place where the train was derailed, who acted suspiciously; and upon these facts, thus linked together, the company rested this defense. If evidence of the other facts in this chain of circumstances was admissible (and the contrary is not contended) no good ground is perceived why the facts of the threats made should alone be excluded. It is the fact that the threats were made that was proved, and why this fact could not be proved, as well as any and all other facts bearing upon the question, is not made apparent." From *Alexander* v. *United States, supra:* "Evidence was admitted tending to show that Mrs. House and Steadman had been seen in conference the day before and that the general impression in the neighborhood at the time was that they had gone off together. House and his friends had armed themselves with guns and pistols and had ridden through the country hunting for them, under the belief that they were hiding together in the neighborhood, or had fled the country together. Now, if evidence was admitted to show that House had armed himself, and was hunting for Steadman under the impression that the latter had eloped with his wife, and was secreting himself in that vicinity, it is difficult to see upon what principle his threats in that connection were excluded. Accepting the theory of the government that mere threats unaccompanied by acts of a threatening nature were irrelevant to the question of defendant's guilt, it is not easy to understand how the acts themselves could be made pertinent without testimony tending to show the reason why House had armed himself, and, with other parties, was scouring the country for Steadman. Their statements in that connection would be clearly illustrative of the act in question, and a part of the *res gestae.*" In *Mutual Life Ins. Co.* v. *Hillman, supra,* it was said: "A man's state of mind or feeling can only be manifested to others by countenance, attitude or gesture, or by sounds or words, spoken or written. The nature of the fact to be proved is the same, and evidence

of its proper tokens is equally competent to prove it, whether expressed by aspect or conduct, by voice or pen. When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party." The holdings in these cases accord with the fundamental rules that an accused person must be proved guilty beyond a reasonable doubt, and that if there is any reasonable hypothesis consistent with the innocence of the defendant the jury should acquit.

Appellant further complains of the refusal of the court to permit a witness to testify as an expert in relation to the quantity and quality of the light of the moon on the night of the tragedy. It was proper to show the phase of the moon and the condition of the atmosphere as facts, but an opinion as to the quantity and quality of the light was not a subject for expert testimony.

Judgment reversed, and cause remanded for a new trial.