THE STATE OF CONNECTICUT *vs.* GUISEPPE MOSCA.

Third Judicial District, New Haven, January Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Upon an information charging an assault with intent to murder, the accused may be convicted of an assault with intent to kill.

Upon such an information, containing but a single count, the foreman of the jury, in response to the clerk's question as to whether the accused was guilty as charged, responded "not guilty," but added that the jury found him guilty on the second count, "which is assault with intent to kill"; and to the clerk's inquiry whether each and all of the jurors so found, each and all assented. *Held* that the trial court, if satisfied that such was in fact the conclusion of the jury, committed no error in accepting it as a verdict of guilty of assault with intent to kill.

Until each juror has given his assent to the final question by the clerk as to their verdict, an opportunity exists to recall any previous assent to a different result and to correct any mistake which may have been made by the foreman in announcing the conclusion agreed upon.

A juror's assent to the verdict may be given by physical signs of approval, as by an inclination of the head, or orally by words.

The fact of such assent, being a matter within the personal knowledge of the court, may properly be found by the trial judge, even if it were not recorded—as it very likely would not be—by the official stenographer.

The mere fact that a jury which had considered a case for several hours without result, reported a verdict shortly after receiving appropriate instructions relative to their duty in attempting to reach a verdict, does not indicate that they misunderstood the instruction as given and regarded it as an order to agree.

Under a claim of error in the charge, an appellant cannot take advantage of an alleged mistake of the jury in failing to understand a proper instruction.

Evidence of the declarations of a third person that he committed the crime charged against the accused is hearsay and inadmissible in defense.

The fact that such third person is at the time of trial in a foreign country is not a reason for admitting the evidence, but rather the reverse; because while an accused can take and put in evidence the deposition of the absentee, the State cannot do so but must confront the accused with the witness against him, and would therefore be unable to contradict the hearsay evidence should it be admitted.

Rulings which are harmless are not ground of error.

The grounds upon which questions are asked, unless obvious, should be stated to the trial court: otherwise it commits no error in excluding them.

It is not error to exclude a question on cross-examination as to what the witness understood the accused to mean by the expression he used.

In the present case the expression used by the accused, an Italian, was susceptible of two meanings, one idiomatic and helpful to him and the other literal and prejudicial. *Held* that inasmuch as each meaning was stated to the jury by the interpreter, the accused had not been injured by the ruling excluding the question alluded to in the preceding paragraph.

Repetitions of the same questions to the same witness, once answered, may very properly be excluded.

The record should show what the direct evidence of the witness was, or that the questions were proper cross-examination, otherwise no foundation is laid for asserting error in their exclusion.

The fact that upon the second trial of a case witnesses testified to matters which were not mentioned by them upon the first, may or may not affect the accuracy of their memory, their credibility, or their fairness, depending altogether upon whether they had been previously questioned on these points; and therefore the exclusion upon cross-examination of questions directed to show whether the witnesses had so testified or not upon the first trial, cannot be held erroneous unless the record discloses that they were interrogated upon these matters in the first trial.

Where cogent reasons existed why certain witnesses called by the State should have kept quiet respecting what they knew about the crime until shortly before the trial, the fact that they did remain silent until then ought not to affect their credibility unfavorably; and under these circumstances there is no error in excluding questions asked upon cross-examination as to when the respective witnesses had first told to any one the story they testified to on direct examination.

Argued January 25th—decided April 19th, 1916.

INFORMATION for assault with intent to murder, brought to the Superior Court in New Haven County and tried to the jury before *Curtis, J.;* verdict and judgment of guilty of assault with intent to kill, and appeal by the accused. *No error.*

*Jacob P. Goodhart* and *Samuel A. Persky,* for the appellant (the accused).

*Arnon A. Alling,* State's Attorney, for the appellee (the State).

THAYER, J. The information charged an assault with intent to murder, the verdict was guilty of an assault with intent to kill. When the jury returned with their verdict the following occurred: "The Clerk. Gentlemen of the jury, have you agreed upon a verdict? The Foreman. We have. The Clerk. Gentlemen of the jury, look upon the accused and by your foreman say whether he be guilty or whether he be not guilty of the crime whereof he stands informed against. The Foreman. Not guilty. The Clerk. You, and each of you, upon your oaths as jurors, say that the accused is not guilty of the crime whereof he stands informed against, and so say you all? The Foreman. Pardon me. As I understand it, guilty of the charge in the information, do I understand you right? The Clerk. This is the request. The Foreman. The jury find him guilty on the second count which is assault with intent to kill. The Court. There isn't any second count. You mean——The Foreman. I didn't understand just what it should be. The Clerk. Gentlemen of the jury, you and each of you, upon your oaths as jurors, say that the accused is guilty of the crime of assault with intent to kill, and so say you all?"

The court finds that in response to the last inquiry of the clerk the jurors assented in the usual manner, and after the jury had so assented the clerk said to them, "You may be seated, gentlemen." It also finds that the verdict agreed upon and assented to by all the several jurors was guilty of an assault with intent to kill.

One of the errors, assigned as a reason of appeal, is the acceptance by the court of this as a verdict of guilty of an assault with intent to kill. There was no second

count in the information, but under an information charging an assault with intent to murder a verdict of assault with intent to kill can properly be rendered, and it was the duty of the court to so instruct the jury. Such an instruction was doubtless given, as no complaint of the charge is made. The foreman made it clear that the jury had not found the accused guilty of an assault with intent to murder, but had found him guilty of an assault with intent to kill. After he had said "not guilty," he explained that he understood the clerk's first inquiry to refer to the charge on the information, and at once said that the jury found the accused guilty of an assault with intent to kill. In what he said following that he manifestly meant, not that he did not know what the verdict should be, but that he did not know just the form in which it should be expressed. He was confused only as to whether there was a second count. That the understanding of the court and clerk, and of all the jurors, was that the verdict as announced by the foreman was guilty of an assault with intent to kill, appears from what immediately followed, the clerk saying: "Gentlemen of the jury, you and each of you, upon your oaths as jurors, say that the accused is guilty of the crime of assault with intent to kill, and so say you all?" to which the jurors assented.

But however the declarations of the foreman are to be construed, the verdict in the case is that which was repeated to the jurors and to which they each assented. The "last answer by each juror made the verdict." *Watertown Eccl. Society's Appeal*, 46 Conn. 230, 233. Until each juror had given his assent to this last question by the clerk, there was an opportunity to recall any previous assent to a different verdict, or to correct any mistake made by the foreman in delivering the verdict agreed upon.

The court properly found the fact that the jurors

each and all assented to the verdict as finally repeated to them by the clerk. Such assent might be given by physical signs of approval, as by an inclination of the head, or by spoken words of assent. In neither case would the stenographer's notes be likely to show the fact of assent, and in the present case they did not show it. It being a fact occurring upon the trial and within the personal knowledge of the court, the judge might properly find it, although it was not recorded by the stenographer. There is, therefore, no occasion to change the finding.

After the case had been submitted to the jury and they had had it under consideration for several hours, they returned into court and reported that they had not agreed upon a verdict. In reply to questions by the court as to the possibility of reaching an agreement, the foreman said: "Well, I couldn't say. . . . When we came here before, I thought surely the prospects of our returning a verdict was possible, but at this time I couldn't say positively what the outcome of further deliberation would be." Thereupon the court read to the jury an extract from *State* v. *Smith*, 49 Conn. 376, at page 386, relative to the duty of jurors during their deliberations in endeavoring to reach a verdict. The jury then retired, and ten minutes later returned with the verdict before mentioned. The defendant claims that under the circumstances of the case it was error for the court to read to the jury the extract from the opinion in *State* v. *Smith*, above referred to. The extract read was a quotation from the charge in that case which was approved by this court. It has been since repeatedly given by trial courts and approved by this court as a proper instruction in cases where a failure to agree had been reported by juries. It is not claimed by the defendant's counsel to be improper in itself, but they claim that the circumstances of this case

made it improper to give it. They have failed to point out any circumstance existing at the time the instruction was given which rendered it improper. The foreman of the jury had not reported that an agreement was impossible. They had considered the case for a long time, and once previously had come into court reporting a failure to agree. It would seem that these circumstances were enough to warrant the court in giving an instruction calculated to aid the jury in reaching an agreement. The circumstance upon which the defendant's counsel base their argument is the fact that the jury so promptly reached an agreement after the instruction was given. It is insisted that the jury must have misunderstood the purpose of the judge in giving the instruction, and considered it as equivalent to an order to agree upon a verdict, else there would not have been so prompt an agreement. This claim does not support the defendant's assignment of error. The defendant cannot take advantage of a mistake of the jury resulting from their misunderstanding of a proper instruction, under his claim that the charge was erroneous. His real complaint in such case relates to the action of the jury and not to that of the court. We see nothing in the prompt agreement of the jury, however, which indicates any misunderstanding on their part of the instruction given.

The assault charged in the information was the shooting of one Raffone. To exculpate himself the accused, upon the trial, claimed that the assault was not made by him but by one Scolo. He offered a witness to prove that Scolo is now in Italy, and several witnesses to prove that Scolo, after the assault was committed, had stated that he had committed it. These statements, upon objection, were excluded, and their exclusion is assigned for error. There were supporting circumstances testified to by several witnesses in the facts

that on the evening of the assault and some time prior thereto, Raffone, in a saloon where both were drinking, used an insulting remark about Aversanians, of whom Scolo was one, and that this led to angry words between them and they were separated by the accused and others. Later they met in another saloon, that of one Mocci, when the controversy was renewed, Scolo then drawing a pistol, when they were again separated, and that shortly thereafter Scolo, who was outside, went to the door of Mocci's saloon and fired a shot inside.

Counsel for the defendant admit that the great weight of authority is against their claim that the testimony of a third person that another than the accused has confessed to the commission of the crime is admissible in favor of the accused. This is unquestionably true. It has been so held in this State in *State* v. *Beaudet*, 53 Conn. 536 (4 Atl. 237) where, on page 541 *et seq.*, the reasons for the rule and the authorities in support of it are so fully discussed as to require no further reference by us. *Benton* v. *Starr*, 58 Conn. 285, 287, 20 Atl. 450, a bastardy case, is another case in point where the same ruling was made. There is nothing in *State* v. *Hawley*, 63 Conn. 47, 27 Atl. 417, in conflict with the principle established in *State* v. *Beaudet*. There the statement made by Hawley's wife was permitted to be testified to by him to show that she was suspicious that he had had improper relations with the woman with whose murder he was charged. The ruling was sustained upon the ground that it was a link in a chain of circumstances connecting the wife with the crime itself. Wigmore and Wharton, whose criticism of the principle is largely relied upon by counsel for the accused, both state that the established rule is that evidence that third persons have confessed themselves to be guilty of the crime charged is inadmissible in favor of the accused, as being mere hearsay. We see no reason

for overruling our former decision upon this question. Scolo is alive and his place of residence was known to the accused and his counsel. Hearsay testimony of his confession was not necessary. Under § 1512 of the General Statutes, his deposition might have been taken by the accused under a commission from the court. Had his confession been permitted to be testified to by third persons, the State would have been powerless to produce Scolo's testimony to contradict them, for the accused was entitled to be confronted in court with the witnesses against him. In such a case, the absence of the witness from the State and beyond the reach of a subpœna, instead of furnishing a reason why it should be permitted to prove his confession by hearsay furnishes a reason against it.

There is nothing in the finding which shows that the questions asked Jane D'Aurio were improperly excluded. She had testified that Scolo had at the time of the assault in question boarded with her about six or seven months, and that on the evening of the assault he came in at about 8:20 o'clock very hastily, without knocking, and very mad. She was then asked: "Did you have a talk with him?" which was objected to and excluded, and this ruling is the first upon which error is assigned. After Scolo left the house, having taken his revolver, the witness, as she testified, went into the front room of her house where there was a window. She was then asked: "Where did you go in the front?" which is the other question excluded by the court and made the ground of an assignment of error. In their brief the defendant's counsel say of the first question that it was not sought to bring before the jury what the talk was, but merely whether there was a talk. It was not claimed in the trial court, and has not been before us, that the question was preliminary to calling for anything which was material to the case. As to the

second question, it is said that the accused claims that Mrs. D'Aurio went to a place from which she saw things which it was important to bring to the attention of the jury. This makes it appear merely that this question was preliminary to something else. But the witness had already said that she had gone to the front room of her house where there was a window, which she described. This was sufficient foundation for her statement as to what she saw. Her precise position at the window could be afterward explained, if the cross-examination made it necessary. The defendant was not harmed by the rulings. But as he failed to state to the court the ground upon which he now claims they were admissible, there was no error in excluding them.

Ursulina Fraschetti was a witness for the State, and had testified that, after she had seen Raffone leave the saloon where the trouble began, the accused came into her store and during a conversation with her, referring to Raffone, the accused said: "I took some slaps away from his face." Upon her cross-examination she was asked what she understood him to mean by that. The question was excluded, and this ruling is made a reason of appeal. The witness testified in Italian through an interpreter. Counsel claimed that the Italian expression was idiomatic and meant not that the accused had slapped Raffone's face, but that he had kept slaps away from his face—had protected him. After the ruling complained of the accused was allowed to ask the witness to repeat the Italian words and to have the interpreter give both the literal and idiomatic meaning of the expression; and it was testified that it means, literally, "I have taken slaps away from his face," idiomatically, "I have taken his part or championed his cause." It was of little consequence what the witness understood the accused to mean, unless it was

shown that the accused meant what she understood. It was important to show that the accused said that he had taken Raffone's part and not that he had slapped his face. The latter would show a motive for the later assault. What his counsel desired was the real meaning of the idiomatic Italian phrase used by the accused. The question objected to did not call for this and was properly excluded. But if improperly excluded, the error was harmless because of what followed.

The same witness, having testified that she was angry with the accused at the time of the conversation above referred to and that she was angry with him before when she had trouble with him, was asked if she had had trouble with him before. She had already testified that she had, and the court properly excluded a question calling for a repetition of the fact. The animus of the witness appeared in her former answers.

The reasons of appeal discussed under parts nine and ten of the defendant's brief relate to questions asked on cross-examination of the State's witnesses Mocci and Exposito. The finding fails to show what the evidence in chief of either of these witnesses was, or that the questions excluded were proper cross-examination. No error in excluding these questions appears on the record.

A number of the State's witnesses were asked upon cross-examination whether or not they had testified to certain points on a previous trial of the accused upon the present information, and some of them were also asked when, for the first time, they had told their story to any one, either a person in authority or others. These questions were excluded, and the remaining fifteen reasons of appeal complain of these rulings. In support of their claim that the questions referring to the testimony upon the former trial were admissible,

counsel for the accused say: "A witness who testified on one trial, and failed to state on that occasion important matters which he testifies to on the second trial, ought to be questioned on this point, and the jury should be permitted to know that this witness, for one reason or another, seems to have a better memory now than he had before." That would depend upon the purpose for which he was called and the questions which were put to him upon the first trial. If he was called only upon a different point on the first trial, and was asked upon that trial no question calling for testimony upon the point testified to upon the second, the fact that upon the first trial he failed to testify upon that point would afford the jury no ground for questioning the accuracy of the witness's memory, or his veracity, credibility or fairness, and questions like those now attempted to be supported would properly be excluded. These were the circumstances under which the rulings below were made. It does not appear upon the record that any of these witnesses, upon the first trial, testified or were questioned upon the points to which the excluded questions refer; on the contrary, counsel, in answer to an inquiry by the court, stated as to some of the witnesses that they were not questioned in the first trial as to the point to which the cross-examination related. The questions, therefore, were properly excluded.

It appears from the defendant's brief that the questions asked the witnesses as to when for the first time they had told their stories, testified to upon the trial, to any person, were asked with the expectation that the answers would be that neither of the witnesses had told his story to any person until shortly before the present trial, and it is claimed that it would be strange that with knowledge of such facts the witnesses did not at once, after the occurrences testified to, relate them

to some one, and that the fact that they did not do so, if proved, would tend to affect unfavorably the credibility of the witnesses. Had the questions been permitted and the answers been what counsel expected, they could not reasonably have argued that the conduct of the witnesses, in failing sooner to speak to any one concerning the occurrences testified to, affected the credit to be given to their testimony. They were under no obligation to speak upon the subject. There were reasons why they might prefer not to speak. The finding shows that both the State and defendant claimed that the evidence in the case tended to show that the shooting of Raffone was the culmination of a disturbance of the public peace which had lasted for more than an hour in the vicinity where the shooting occurred, during which the police had been sent for and went and quieted the disturbance, which was renewed after the policemen's departure, and it appears from the finding that each of the witnesses in question was in some way connected with these occurrences, and that at least one of them was a friend of Scolo, who, the defendant sought to show, did the shooting. It is not strange that under these circumstances the witnesses kept silent as to the occurrences preceding the shooting. Their fear of the law, and that they might themselves be prosecuted, or their friendship for others who were implicated in the affair, would recommend silence on their part. The fact that these witnesses for the State had for more than a year refrained from telling the prosecuting authorities of facts thought by the latter to be adverse to the claims of the accused, indicates no bias or prejudice on the part of the witnesses toward him. The fact, if proved, that they neglected for nearly a year to impart to any one their knowledge of the occurrences testified to, would not have been inconsistent with entire veracity on their part in the testimony which they had given, nor would it in any

way have tended to affect their credit. The evidence was properly excluded.

There is no error.

In this opinion the other judges concurred.