## THE PEOPLE *v.* LAWRENCE.

WHERE, on trial upon an indictment for murder, the dying declarations of the deceased are introduced by the prosecution, it is error to exclude proof offered by defendant of other statements made by the deceased contradicting his dying declarations.

Such proof is admissible under the general rule that the credit of a witness may be impeached by proof that he has made statements contrary to what he has testified, and the condition that the attention of the witness must first have been called to the supposed contradictory statements, is from necessity dispensed with in the case of dying declarations.

Where an indictment for murder is returned by the grand jury without being indorsed "a true bill" by the foreman, the objection to it, under the statute, must be made by motion before demurrer or plea, otherwise the defect is waived.

The indorsement upon an indictment is not, in this State, essential to its legality and sufficiency. It is only evidence of the finding of the indictment, and the object of the statute in requiring it is simply to secure the authenticity and genuineness of the instrument. This end is equally attained when the indictment is presented by the grand jury in open Court, and is filed by the Clerk with the other records.

APPEAL from the Sixteenth Judicial District.

The appellant, William Lawrence, was indicted, with one Crims, for the murder of Constantine Massey, by shooting him with a pistol, and was tried separately and convicted of murder in the first degree. The indictment was indorsed as follows: " In Court of Sessions, Calaveras County, January Term, A. D. 1862. *The People* v. *William Lawrence* and *John P. Crims.* Indictment for murder. Filed January 10th, 1862. G. F. Wesson, Clerk of Court of Sessions, by A. W. Genung, Deputy. Witnesses, W. A. Kelly, Emeline Lawrence. W. J. Gatewood, District Attorney." After a jury had been empanneled and sworn upon a plea of " not

People *v.* Lawrence.

guilty," defendant moved to be discharged, on the ground that the indictment was insufficient to support a conviction by reason of its not being indorsed " a true bill " by the foreman of the grand jury. The Court denied the motion and the defendant excepted.

On the trial the prosecution introduced a written statement, purporting to contain the dying declarations of the deceased as to the circumstances of the killing as taken down by his attending physician shortly before his death and some eight days after the shooting; and also, under defendant's objection, proved by a witness, who was present when the writing was made, other declarations of the deceased made at the time in addition to and explanatory of the written statement.

After the evidence for the prosecution had closed the defendant offered to prove that the deceased, after the shooting and at the primary examination of defendant before the committing magistrate, swore to facts directly contradicting his dying declarations. The Court refused to admit the evidence, and the defendant excepted.

The defendant then offered to prove that the deceased had at different times, after the shooting and injury, made declarations contradicting his dying declarations put in evidence. The Court refused to admit said evidence, to which ruling and decision the defendant excepted.

*Humphrey Griffith*, for Appellant.

I.  The objection to the indictment is, that it is not indorsed " a true bill." This indorsement is the vitality of the bill; without it there can be no indictment. Article five of the Amendments to the Constitution of the United States provides, that " no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, etc." Article one, section eight, of the Constitution of this State, embodies the same provision in the same terms. This right of the citizen has never been questioned and will not be now.

What, then, constitutes " an indictment " by the grand jury. It is a formal charge made by them in their capacity as grand jurors and entered of record, charging the commission of a crime, describing it, upon some person. The grand jury are required to make

People *v.* Lawrence.

due inquiry into all offenses committed or triable within their county and to find their verdict thereon. The result of that verdict is either " a true bill," or " not a true bill," or " not found; " in either event this indorsement must be made by them and signed by the foreman of the grand jury. This is the evidence of their action, and it is the only evidence authorized by the statute upon any particular case. The argument, then, that the objection should have been taken by motion to set aside the indictment for one of the causes mentioned in section two hundred and seventy-eight, is without force here, for this indictment does not appear to be found at all. A charge appears to have been preferred by the District Attorney, but the action of the grand jury thereon nowhere appears. It will not do, in a case of this magnitude especially, to presume they did a certain thing, for the law says that must be evidenced in a certain way. As well might a judgment of death be sought to be sustained when there is no record of the verdict of a petit jury as an indictment with no record of the verdict of a grand jury. That this is the correct view of the indictment in this case—that in fact there is no indictment found by the grand jury, we refer to *Commmonwealth* v. *Sergeant* (Thacher's Crim. Cas. 116) ; *Gardiner* v. *The People* (3 Scam. 85) ; *Webster's case* (5 Greenleaf, 432) ; 1 Arch. Crim. Prac. & Plead. (Waterman's notes) 98.

II. The Court erred in refusing to permit proof of statements of deceased contradicting his dying declarations. In *People* v. *Glenn* (10 Cal. 32) this Court considered at some length the admissibility of dying declarations, holding therein, that while the sense of impending dissolution may compensate for the want of an oath, it can never make up for the want of a cross-examination, and placing the admissibility of the declaration on the sole ground of necessity, at the same time admitting its dangerous and unsatisfactory nature. In the same case, also, after the introduction of the written statements of the deceased, his oral statements made at a different time were admitted. " The necessity of the case " is held to overrule the right of the defendant to confront his accusers and their witnesses. The necessity of the case admits the dying declarations of the deceased, though made, perchance, by an ignorant, bigoted, prejudiced man.

This rule, which is invoked successfully to admit the declarations of deceased, may surely, with equal force and effect, be invoked by the defendant to shield him from the effect of declarations made by a party deceased, which declarations have at other times and in an equally solemn manner been contradicted by the same person. There having been no cross-examination afforded the defendant on the declarations offered by the prosecution, because the necessities of the case did not allow it, the same necessity will dispense with any cross-examination as a foundation for the introduction of contradictory statements.

*Attorney-General,* for Respondent.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

The dying declarations of the deceased were admitted in evidence against the defendant without objection.    These declarations relate to the cause of the homicide, and the circumstances attending it.    After the prosecution had closed the defendant offered to prove that on his examination before the committing magistrate the deceased had testified to facts directly contradicting his dying declarations; and, also, that he had made other and contradictory declarations.    But the Court refused to allow the proof, and its ruling in this respect constitutes one of the errors assigned for a reversal of the judgment.

It does not appear from the record on what ground the Court based its ruling, and we are unable to perceive any which is at all tenable.    The rule is general that the credit of a witness may be impeached by proof that he has made statements contrary to what he has testified.    There is, it is true, a condition to the application of the rule with reference to verbal statements : that the attention of the witness must be previously called to the particular occasion and circumstances under which the supposed contradictory statements were made, in order to give him an opportunity of making any explanation of the matter which he may have.    (1 Greenleaf's Ev. sec. 462.)    But this preliminary condition, it is clear, cannot be complied with where dying declarations are offered in evidence,

except in very rare cases. Such declarations are generally made to the physician or friends of the deceased, in the absence of the party against whom they are offered, who, of course, has no opportunity of cross-examination, or of directing the attention of the deceased to any alleged contradictory statements made by him. Declarations of this character are received with the greatest caution. They are admissible on the ground of necessity ; but, as very justly observed in *People* v. *Glenn*, (10 Cal. 36) though the condition of the person making the declarations in the last hours of life, under a sense of impending dissolution, may compensate for the want of an oath, it can never make up for the want of a cross-examination. There would be no justice, therefore, in any rule which would deprive the accused, under such circumstances, of the right to impeach the credit of the deceased by proof of his having made contradictory statements as to the homicide and its cause.

The conclusion we have thus reached disposes of the appeal, and necessitates a reversal of the judgment. There is, however, another error assigned, which it is proper to dispose of, inasmuch as the refusal to discharge the prisoner for the alleged illegality and insufficiency of the indictment will otherwise be again presented in the Court below, and, perhaps, upon a second appeal. The indictment was returned to the Court signed by the foreman of the grand jury, but without being indorsed " a true bill," and the absence of this indorsement was urged as a fatal defect to the indictment. The statute requires the indictment to be indorsed " a true bill," and the indorsement to be signed by the foreman, (Crim. Prac. Act, sec. 229) and provides that the indictment shall be set aside, upon motion of defendant, when not thus indorsed, provided the motion be made before a demurrer or plea is interposed (Secs. 277, 278) ; but if not thus made, that the defendant shall be precluded from afterward taking the objection. (Sec. 280.) In the present case the defendant pleaded to the indictment, and did not raise the objection until after the jury were impanneled and sworn. It was too late then, under the statute, to urge the objection. The indorsement is not essential to the legality and sufficiency of the indictment, as contended. It is only evidence of the finding of the indictment, and the object of the statute in requiring it is simply

to secure the authenticity and genuineness of the instrument. This end is equally attained when the indictment is presented by the grand jury in open Court, and is filed by the Clerk with other records. If in the present case no indictment had in fact been found, the Court would, undoubtedly, upon a proper application, have allowed the plea to be withdrawn and the motion made. But the truth being that it had been found and presented in open Court, no objection could be urged to it except a technical one.

We are aware that the decisions in England are different; that there the want of the indorsement is fatal to the indictment. The reason is obvious. There the indictment is drawn and presented to the grand jury before any investigation is had upon the accusation. When the investigation is closed, the jury return the result of their deliberations by the indorsement on the indictment: "A true bill," or " Not a true bill," or " Not found." In this State the investigation is had in the first instance upon the complaint, made either by the public prosecutor, or by private persons, or upon the declaration of one of the grand jurors, (Crim. Prac. Act, sec. 213) and it is only after the jury have come to a conclusion against the party accused that the preparation of an indictment is required from the District Attorney. The conclusion of the jury is evidenced by the presentation to the Court of an indictment, or by a return of the papers from the committing magistrate, if any have been delivered to them, with an indorsement that the charge is dismissed. (Id. sec. 230.) If no papers from the committing magistrate have been in their hands, their judgment upon the complaint is indicated by the fact that no indictment is returned.

In some of our sister States, also, the indorsement " a true bill " is held essential to the validity of the indictment, but the decisions in this respect have arisen from an adherence to the English rule, even after the English practice had gone out of use. (The State v. Freeman, 13 N. H. 488; The State v. Mertens, 14 Mo. 94.)

Judgment reversed and cause remanded for a new trial.