STATE v. JAMES BLACKBURN.

*Practice—Murder—Evidence—Dying Declarations.*

1. This court will not grant a petition by prisoner, after the argument here, for a *certiorari* to supply alleged omissions in the judge's statement of the case on a trial for murder.

2. It is not error to refuse a motion to quash an indictment not made in apt time.

3. Declarations of the deceased made immediately previous to his death, that he was going to die from the effects of a wound and detailing the circumstances under which it was inflicted by the prisoner, are admissible as dying declarations on a trial for murder.

4. Where there is evidence tending to destroy the effect of such declarations. it is competent for the state to corroborate them by showing that deceased made similar declarations a few minutes after the fight, though it did not appear that he was then under the apprehension of immediate death.

*State* v. *Poll,* 1 Hawks, 442 ; *Tilghman's case,* 11 Ire., 513 ; *Moody's,* 2 Hay., 31 ; *Thomason's,* 1 Jones, 274 ; *Twitty's,* 2 Hawks, 449 ; *George's,* 8 Ire., 324 ; *Dove's,* 10 Ire., 469 ; *March* v. *Harrell,* 1 Jones, 329, cited and approved.)

INDICTMENT for Murder tried at Spring Term, 1878, of PENDER Superior Court, before *Eure, J.*

The bill was found at fall term, 1877, of Sampson superior court, and at the following term an order was made on affidavit of prisoner, after his arraignment and plea of not guilty, to remove the case to Pender, and when it was called, the prisoner moved to quash the bill, for that, it had been found by an incompetent grand jury—one of whom not having paid his taxes for the preceding year, which fact came to his knowledge after the order for removal was made. Motion refused and prisoner excepted.

The dying declarations of the deceased, John D. Lamb, (as set out by Mr. Justice ASHE in the opinion) were admitted as evidence after objection by prisoner, that part of which detailing the transaction being as follows:  The deceased said he went to prisoner's cooper-shop and asked him if he had missed two barrels, and if he did that he (deceased) took them.   Prisoner replied by telling him to take the other barrels and every thing he had away from there, that he had treated his (prisoner's) children badly.  Deceased said, " Jim, you must be a fool," and the prisoner caught up a hatchet and struck him with it on the side of the head above the ear ; did not know how the wound on the top of his head was made; he fell and after getting up tried to go to the road ; did nothing to prisoner except to make the remark aforesaid ; did not strike prisoner, and no one was present except prisoner and himself.

A witness was then introduced who testified that he went to the prisoner's shop shortly after the difficulty, and saw a bloody hatchet, pole and adz, and blood sprinkled about on the shavings, and some other evidences of a mutual combat ; that on the day before the fight he heard deceased say that prisoner's children had taken some of his wood, and if prisoner bothered him he would wear him out to a frazzle ; that deceased did not appear to be mad at the time he made

this remark. Another witness testified that there was an altercation between them, deceased walking up to prisoner and slapping his hands at him, and he then knocked prisoner down with a frow, and prisoner struck him with the hatchet and threw the adz at him.

The state then introduced evidence to corroborate the dying declarations, and the witness testified as to declarations made to him by deceased a few minutes after the difficulty occurred, which were in substance the same as above stated.

The prisoner asked the court to charge:

1. If deceased struck prisoner, and by reason of the *furor brevis* caused by the blow, prisoner killed deceased, it would be manslaughter. Given.

2. If deceased made the assault and it was violent and sudden, and prisoner was unable to retreat without danger of death or great bodily harm, and prisoner slew him, it would be homicide excusable. Refused.

3. If prisoner was in his yard at work when assaulted, he was not bound to retreat to the wall, but had the right to repel force with force so as to overcome his assailant, and if the killing occurred in this way, it was excusable. Refused.

4. If the jury believe deceased went into prisoner's enclosure and assaulted him, knocking him down, and prisoner struck with the hatchet but did no serious injury, and thereupon the deceased used the frow, a deadly weapon, and prisoner believed that he was in danger of losing his life or receiving great bodily harm, and slew the deceased, it would be excusable homicide. Refused.

5. If deceased went to prisoner's, having been forbidden to come upon his premises, he was guilty of a forcible trespass, and if he there made an assault on prisoner, the latter was not bound to retreat, and if the killing occurred by repelling force with force, it would be excusable homicide. Refused.

These instructions were refused on the ground that they

STATE *v.* BLACKBURN.

were not applicable to the facts. The jury found the prisoner guilty of manslaughter. Judgment, appeal by prisoner. After the argument in this court, a petition for a *certiorari* was presented.

*Attorney General*, for the state.
*Mr. J. D. Kerr*, for the prisoner.

ASHE, J. Since the argument of this case, a petition has been presented to this court for a *certiorari* to supply alleged omissions in the statement of the case made out by the judge before whom it was tried. To grant the petition, would establish a precedent for a practice that would lead to the greatest confusion and uncertainty in the administration of the criminal law. This court can only look to the record and the statement of the case made by the judge which accompanies it, to see whether there was error in the proceedings of the court below by which the prisoner has been prejudiced. A different practice cannot be allowed to obtain. The *certiorari* is therefore refused.

The prisoner moved to quash the indictment, after he had plead not guilty, for an alleged defect in the organization of the grand jury. The objection came too late. It was not taken in apt time. *State* v. *Davis, ante,* 412, and the authorities there cited.

To show how the fight between the prisoner and the deceased commenced, the state proposed to prove the dying declarations of deceased, and for that purpose introduced Dr. A. M. Lee, a practicing physician, who testified that he was called in to see the deceased on the first of November, 1877, and found him propped up in a rocking chair, with a wound on the side of his head above the left ear, which was made with a sharp instrument, and cut through the skull, which produced his death, and another slight wound on the top of his head. The deceased then told him that he was

going to die, or the wounds would kill him. On the third of November, he saw him again, and the deceased told him "he was going to die and would never be able to get out of the house again." On the fifth he saw him again, and he said "he was going to die;" and he was unconscious from that time until he died on the twentieth of the month. The prisoner objected to the introduction of the dying declarations, but His Honor overruled the objection and admitted the evidence, and the prisoner excepted. There was no error in this ruling. *State* v. *Poll*, 1 Hawks, 442; *State* v. *Tilghman*, 11 Ire., 513; *State* v. *Moody*, 2 Hay., 31.

After the state had rested in its examination of the witnesses, the prisoner introduced two witnesses whose testimony contradicted the dying declarations of the deceased in material points. Thereupon, the state in order to corroborate the dying declarations introduced one J. R. Beaman to prove declarations of deceased made within a few minutes after the fight, as to how it had occurred. The prisoner objected to the evidence, and the objection was properly overruled. *State* v. *Thomason*, 1 Jones, 274; *March* v. *Harrell*, *Ibid.*, 329; *State* v. *Twitty*, 2 Hawks, 449; *State* v. *George*, 8 Ire., 324; *State* v. *Dove*, 10 Ire., 469.

At the close of the testimony, the prisoner prayed the court for the special instructions set out in the statement of the case. The first was given, but His Honor refused to give the others on the ground that they were not applicable to the facts. In this there was no error.

In any view of the case, the killing was manslaughter. Taking the testimony of the witnesses for the defence alone, together with the facts which it is proposed by the petition for the *certiorari* to interpolate in the statement of the case, and there is no ground upon which the killing can be justified as an act of self-defence. The prisoner should be content with the verdict, and might congratulate himself that the jury have awarded to him the full benefit of the benig-

nity of the law. There is no error. Let this be certified to the court below that further proceedings may be had according to law.

PER CURIAM. No error.