## BATTLE *vs.* THE STATE OF GEORGIA.

1. Originally, at common law, dying declarations were admitted in evidence with great caution, and then only from necessity, and when the declarant was *in extremis*, with a full knowledge of his condition. But now such declarations may be proved, notwithstanding there may be abundant evidence as to the homicide and the circumstances attending it.
2. Where dying declarations were proved, it was admissible to show that, after the deceased was wounded, he made statements concerning the transaction conflicting with such dying declarations.

HALL, J., concurred.
JACKSON, C. J., dissented.
January 6, 1885.

Criminal Law. Evidence. Dying Declarations. Before Judge SIMMONS. Crawford Superior Court. March Term, 1884.

Bob Battle was indicted for the murder of Nelson Jackson, was convicted, and was sentenced to the penitentiary for life. He moved for a new trial, on the following among other grounds:

(1.) Because the court admitted the following evidence as the dying declarations of deceased : " He said that on Sunday he was absent from home; and he called Uncle Felix Harrison's name, and said he was at his home, and he heard some noise at his house and went back home. There were two roads that came together, and there is a gully down in them, and he found Bob and his wife, Della, and they spoke to him, and his wife remarked that they had come to settle their difficulty Bob remarked, yes, by G—, it must be settled right now. He said Bob had a rock in his hand and a knife in his pocket; and he had to get down off his mule ; and he asked to pass them, and they would not let him; and he called to one of his children to bring him the ax, and just as soon as he got hold of it, Della grabbed it, and Bob jumped and cut him, and gathered him around the chest, and stabbed him in the chest, and as he wheeled to run, Bob cut him in the shoulder." [The attending physician testified that the deceased had received two stabs, the fatal one being in his chest and reaching his lungs; that he attended deceased for thirty-eight days, and until about two days before his death ; that he informed deceased that there was no chance for his recovery; that, shortly before his death, deceased stated that he was conscious of his condition and had no hope of recovery, and then made the statements set out above. At that time, the physician did not think he would live twenty-four hours.]

(2.) Because the court refused to admit evidence of the following facts, offered to rebut the dying declarations: More than twenty-four hours after the deceased was cut, he stated to certain persons that, if Della Battle had not caught the ax, he would have killed Bob, and they would have hauled him off from the place, for he intended to kill

him, and could have done so, if Della had not caught the ax.

The motion was overruled, and defendant excepted.

W. S. WALLACE & SON; R. D. SMITH, for plaintiff in error.

C. ANDERSON, attorney general; J. L. HARDEMAN, solicitor general, for the state

BLANDFORD, Justice.

Bob Battle was indicted for murder, in Crawford superior court, for killing Nelson Jackson; he was found guilty, and, under the recommendation of the jury, sentenced to serve in the penitentiary for life. Defendant moved for a new trial, on several grounds, which was overruled by the court, and he excepted, and the case is brought here on those exceptions.

There are but two exceptions insisted upon in this court:

(1.) That the court erred in admitting the dying declarations of the deceased in evidence.

1. These declarations were properly admitted under our law and the various rulings of this court It is doubtful if they were admissible, originally, at common law. The English judges admitted such evidence, originally, with great caution, and then only from necessity, and when declarant was *in extremis*, with a full knowledge of his condition, such condition being equivalent in its solemnities to the sanction of an oath; but it has always been considered that this rule was a departure from the general rule excluding hearsay evidence; and while the circumstances under which the declaration was made were considered equivalent to an oath, yet these circumstances furnish no equivalent to the defendant for his right of cross-examination. Originally this testimony was resorted to from necessity, but now it may be had, notwithstanding there may be abundant

evidence as to the homicide and the circumstances attending it. Whereas the judges at one time admitted this evidence with great caution and hesitation, now it seems to be resorted to by the prosecuting officers and admitted as a matter of course, provided the statute be complied with.

(2.) The next ground of the motion for new trial insisted on here is, that the court erred in rejecting the testimony of several witnesses to prove the sayings of the deceased after he was cut; that "if they had not caught the ax which he had, as he drew it back to strike Bob, they would have had to carry him off in a wagon, as he intended to kill him, and would have done so."

2. It has been held at the common law that the accused could prove the general bad character of the deceased, that he was unworthy of belief, and any other matter which might legitimately affect the credit of his statement. Why can it not be shown that he made a statement or statements at different times different from his dying declaration? If a witness is sought to be impeached as to a statement made under oath by showing he has made statements previously not under oath different from the statement deposed to, this has always been allowed, if the witness's attention is called to the time, place and circumstances under which the former statements were made. It cannot be easily seen, if the dying declarations of the deceased, made *ex parte* in the presence of his own friends and relatives, and not in the presence of the accused or his friends, without a cross-examination, and testified to by his friends and relatives, are to be admitted against the accused from the necessity of the case, why the declarations of the deceased, after the mortal blow is given, to other persons and at other times, different from the dying declarations, should not be admitted in evidence to impeach the dying statement. If the one is admitted contrary to the general rule, why should not the other be likewise admitted? The former is admitted in favor of public justice, why not the latter in favor of life

and liberty? The main objection urged to its admissibility is that the attention of the deceased was not called to the time, place and circumstances under which the statements were made, but a sufficient reply to this is that the necessity of the case, the declarant being dead, makes this impossible; it stands on a like necesssity as the admission of dying declarations. If public policy requires the admission of dying declarations in advancement of public justice, the like policy requires the admission of different statements of the accused at different times in favor of life and liberty. See 10 Cal., 36; 21 Cal, 368; Roscoe's Crim. Ev., 36; Wharton Crim. Ev., 298; 9 Yerger, 278, 280; 25 Mich., 405; Arch. Crim. Pl. and Pr., 434; 43 *Ga.*, 238.

It is to be admitted that none of these authorities are fully up to this point, except the 10 and 21 Cal. R., above cited, and it is to be conceded that there are decisions the other way. But when it is considered that the prosecuting officers of the state, on all occasions when they can, put in the dying declarations of deceased persons, whether there be a necessity for it or not, it is but right that the accused should have whatever benefit he may derive from contrary statements of the deceased.

The judgment of the court below should be reversed.

Judgment reversed.

HALL, Justice, concurred, but furnished no written opinion.

JACKSON, Chief Justice, dissented, but furnished no written opinion.