[No. 6011. Decided April 13, 1906.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES MAYO, *Appellant*.[1]

JURORS—CRIMINAL LAW—ACCUSED'S RIGHT TO DEMAND LIST. Bal. Code, § 6879, providing that an accused shall on demand be served with a list of the petit jurors returned, does not entitle him to be tried by a jury selected solely from the names so returned, nor to demand that such list be exhausted before a special venire be issued, where part of such jurors are in attendance upon another department of the court.

CRIMINAL LAW—DYING DECLARATIONS—KNOWLEDGE OF IMPENDING DEATH. A dying declaration is sufficiently shown to have been made in the realization of impending death where the doctor in attendance informed deceased that he was about to die, and the deceased stated that he realized it.

SAME—FAILURE TO IDENTIFY ACCUSED—ADMISSIBILITY. A dying declaration is not inadmissible because it failed to identify the accused, where it adds a link in the chain of evidence and made it possible to identify the person who committed the crime.

SAME—IMPEACHMENT—INCONSISTENT STATEMENTS—ADMISSIBILITY. A dying declaration may be impeached by showing other statements inconsistent therewith.

1Reported in 85 Pac. 251.

SAME—METHOD OF IMPEACHMENT. In a prosecution for homicide, it is error to require the defendant, in offering evidence of statements by the deceased which were inconsistent with his dying declaration, to introduce them after the manner of impeaching evidence; but he is entitled to ask the witness directly what statements were made by the deceased.

TRIAL—INSTRUCTIONS—WHEN REQUIRED IN WRITING. Under Laws 1903, p. 120, subd. 4, requiring the court, upon request, to instruct the jury in writing, unless the same is taken by the stenographic reporter, the employment of a private reporter who is not subject to the control of the court will not excuse the failure to instruct in writing.

CRIMINAL LAW—RIGHT TO APPEAR AND DEFEND—LIMITING ARGUMENT TO JURY—ABUSE OF DISCRETION. In a capital case in which twenty witnesses were examined and four days were consumed in the trial, it is an infringement of the constitutional right of the accused to appear and defend, and an abuse of discretion, to limit the time for argument to the jury to an hour and a half on each side.

CRIMINAL LAW—INSTRUCTIONS—PRESUMPTION OF INNOCENCE. In a criminal case it is the duty of the court to instruct the jury as to the presumption of the innocence of the accused.

SAME—DYING DECLARATIONS—INSTRUCTIONS. It is error to refuse to instruct that the dying declarations should be received with caution.

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered July 10, 1905, upon a trial and conviction of the crime of murder in the second degree. Reversed.

*Sullivan, Nuzum & Nuzum,* for appellant.

*R. M. Barnhart* and *A. J. Laughon,* for respondent.

FULLERTON, J.—The appellant was informed against in the superior court of Spokane county for the crime of murder in the first degree, convicted of murder in the second degree, and sentenced to a term in the penitentiary. From the judgment of conviction he appeals.

He first contends that he was denied substantial rights given him by statute by the manner in which the jury was impaneled, and a number of his assignments of error are

based on rulings made by the court with reference thereto. These assignments, as they embrace but a common question, can best be considered together. The code (Bal. Code, § 6879) provides that any person indicted or informed against for a capital crime "shall, on demand upon the clerk by himself or counsel, have a list of the petit jurors returned delivered to him at least twenty-four hours before trial." Pursuant to this statute, some three days before the time set for the trial of his case, the appellant served upon the clerk a written demand for the list of jurors returned, and then in attendance upon the court. The clerk, in compliance therewith, certified and served upon him a list of all those serving on the regular panel, some fifty-three in number; also, a list of thirty-six more whom the court had ordered drawn from the jury list and directed to be summoned by special venire returnable on the morning fixed for the trial.

The superior court of Spokane county consists of three departments, all three of which were engaged in trying causes by jury at the time the appellant's case was called for trial. On the call of his case, some twenty-four of the jurors on the regular panel did not report for duty in the department in which the appellant was tried, being engaged in other departments, and the court, over his objection, ordered the trial to proceed without requiring them to be brought in; and also over objection directed that those summoned on the special venire, and who had reported for the first time that morning, be listed with the regular jurors. The impaneling of the jury was then commenced, and was proceeded with until the afternoon of the next day, when the judge presiding discovered that the jury could not be completed from the jurors then in attendance upon his department. He thereupon ordered twenty-four more names drawn from the jury list, and a special venire, returnable forthwith, issued for the jurors whose names were so drawn. Of these the sheriff summoned six, and their names were written on ballots, and placed in the clerk's box, over the objection of the appellant.

A juror who had been excused from attendance upon the court until that time also returned, and his name, over objection, was placed in the box. From this list, together with twelve of the regular panel, who had been brought in from another department, the jury before whom the appellant was tried was finally completed.

It is the appellant's contention that the statute above cited confers on a defendant accused of a capital crime the right, not only to have the list of jurors returned and in attendance upon the court served upon him twenty-four hours before his case is set for trial, but the right to have the jury before which he is tried selected from the list so served upon him; or, at least, to have that list exhausted in an effort to secure a jury before additional jurors are added to the list. The statute in question was enacted before Washington was admitted into the Union as a state, and at a time when the court system and the method of drawing and summoning jurors differed widely from the present court system, and the present method of drawing and summoning them. At that time we had a district court, which held terms at stated intervals fixed by law. Jurors were drawn in advance of these terms to report at the commencement thereof. If a sufficient number did not report to form a panel of the required number, the sheriff summoned from the by-standers, or the body of the county, a sufficient number of persons to make up the number. From this panel the trial juries required in the cases pending before the court were drawn. But since statehood, the changes from the old system have been radical, not only in the method of summoning trial jurors, but in the court system itself. Now there is in each county a superior court, which has no terms, and is open for business at all times except on non-judicial days. In some counties the court is composed of more than one department, for each of which there is a separate judge. These several departments have equal powers, and all may engage in trials by jury at the same time. Each department selects its trial jury from the same general panel. These

panels are drawn from lists prepared by the jury commis-
sioners. On the second Saturday of each month, the court
orders the commissioners to draw from the jury list the names
of such number of persons as he thinks will be required for
jury service during the ensuing month, and a venire is issued
for the persons whose names are so drawn. The court is
empowered, also, to order drawn and summoned by special
venire, returnable at such time as it may direct, any addi-
tional number that the judge may think necessary from
which to select a jury in any particular case. Nor does a
single exercise of this power exhaust it. It may be resorted
to until enough qualified jurors are so drawn. Moreover,
this is the only way an exhausted panel may be now refilled
in counties of the class to which Spokane belongs. It is no
longer permissible to select from the by-standers, or issue an
open venire to the sheriff. Whenever the general panel is
exhausted, and additional jurors are required to complete a
trial jury, they must be drawn from the jury list and a special
venire issued for them, while under the old practice they
were summoned from the by-standers by the sheriff.

From the foregoing, it is apparent that the section of the
statute relied upon by the appellant, while harmonious and
consistent with the statutes and general practice in vogue at
the time it was enacted, has been rendered practically ob-
solete by the later statutes and practice. While a person
charged with a capital offense may still demand, and may
still have, a list of juros in service upon the court at the time
his case is called for trial served upon him, yet it cannot be
held that he has the right to have the jury which is to try
his case selected exclusively from that list. Such a rule
would make it impossible to try in one county two persons
accused of capital crimes at the same time, no matter how
many departments of the court there might be in that county.
In fact, the rule would subordinate the business of the entire
court to the demands of the particular case, and such we
cannot hold to be the intention of the legislature. The later

statutes, in so far as they conflict with the earlier one, must
be held to have superseded it; and consequently, we must
hold that if it ever was the rule that a person charged with a
capital crime had the right to have the jury before which he
was to be tried selected from the panel in attendance upon
the court at the time his case was called, the right has been
taken away by the later statutes.

The information charged the appellant with having killed
and murdered one William Crane by shooting him with a
revolver.   The state offered, and the court admitted in evi-
dence, statements made by Crane after he had been wounded,
and just prior to his death, concerning the circumstances of
the shooting.   These were admitted as dying declarations,
and it is urged by the appellant that the court erred in so
doing; first, because it was not made to appear that the
declarant realized at the time they were made that he was
about to die, or must die from the injuries he received; and
second, because the description given of the person who did
the shooting does not identify that person as being the de-
fendant.   As to the first objection, the evidence shows that
the declarant had been informed by the doctor in attendance
upon him that he was about to die, and that he stated that
he realized it.   This was sufficient to comply with the rule.
*State v. Baldwin,* 15 Wash. 15, 45 Pac. 650.

The second objection is equally without merit.   The ad-
missibility of a dying declaration does not depend on its
completeness.   That it adds a link in the chain of evidence
is all that is necessary.   The declaration in this case did at
least add a link to the chain of the evidence against the appel-
lant.   It described the circumstances under which the crime
was committed, and made it possible to identify the person
who committed the crime.

The appellant offered evidence tending to show that the
deceased had made other statements, after receiving the wound
from which he died, inconsistent with those contained in his

dying declaration. The court at first refused to admit the statements at all, but afterwards allowed the appellant to introduce them after the manner of impeaching evidence; that is to say, by permitting the appellant to ask the witness if the injured person did not, at a certain time and place, say so-and-so, concerning the manner in which he received the wound, instead of permitting the witness to be asked directly what the injured person said to him concerning that matter. That the dying declaration may be impeached by showing that the person making them made other statements inconsistent therewith is held by the great weight of authority. *People v. Lawrence,* 21 Cal. 368; *State v. Blackburn,* 80 N. C. 474; *McPherson v. State,* 9 Yerg. 279; *Hurd v. People,* 25 Mich. 405; *Battle v. State,* 74 Ga. 101; *Felder v. State,* 23 Tex. App. 477, 59 Am. Rep. 777; *Morelock v. State,* 90 Tenn. 528, 18 S. W. 258; *Green v. State,* 154 Ind. 655, 57 N. E. 637; *Carver v. United States,* 164 U. S. 694, 17 Sup. Ct. 228, 41 L. Ed. 602. The only cases to the contrary cited to us are, *Wroe v. State,* 20 Ohio St. 460, and *State v. Taylor,* 56 S. C. 360, 34 S. E. 939.

It will be observed on examination, however, that none of these cases touch the precise point made here. While they maintain or dispute the doctrine that a dying declaration may be impeached, the method of impeaching it is not touched upon. Treating the question as one of first impression we can see no reason for the restriction imposed by the court. In those jurisdictions which adhere most strictly to the rule that the inquiry made of the impeaching witness must embody the substance of the foundation question, and must be so framed as to admit of an affirmative or a negative answer, do so on the ground that otherwise hearsay evidence, not strictly contradictory, might be introduced to the injury of the parties and in violation of legal rules. But no such reason can have force in a case of this kind. Here there is no preliminary or foundation question; nor, from the nature of things, can there be any such question, and necessarily

the impeaching evidence must be brought in in the form of original evidence. The state, moreover, cannot be prejudiced by permitting the general question to be asked. If the evidence supports the dying declaration, the state's case is that much strengthened; on the other hand, if they are contradictory, the defendant is entitled to them under the general rule above cited. But perhaps the better reason for adopting the rule contended for is that the jury are more apt to get a correct understanding of the supposed contradictory statements when they are detailed by the witness who heard them than they are when recited in the form of a question put by counsel with its necessary wealth of *inuendo* and other explanatory matter. To arrive at the truth is the aim of all evidence, and the courts should follow the methods which best conserve that end. It seems to us that, in cases of this kind, that method would be to direct the attention of the witness to the matter desired to be introduced in evidence, and let him state in his own words what the deceased said concerning it.

At the conclusion of the evidence, the appellant requested the court to charge the jury in writing. The court did not comply therewith, and the appellant excepted thereto, and assigns the action of the court as error. The statute (Laws 1903, p. 120, subd. 4) provides that,

"When the evidence is concluded, either party may request the judge to charge the jury in writing, in which event no other charge or instruction shall be given, except the same be contained in the said written charge; . . . Provided . . . That whenever in the trial of any cause, a stenographic report of the evidence and the charge and instructions of the court is taken, the taking of such charge or instructions by the stenographic reporter, shall be considered as a charge or instruction in writing within the meaning of this section."

While the record is silent on the question, it is said by counsel that there were two stenographers present taking a stenographic report of the evidence, one employed on behalf of the prosecuting attorney, and the other by the defendant.

These presumably took a stenographic report of the court's charge as it was delivered, and the question is whether their presence relieved the court from this obligation to charge the jury in writing, when so requested. It is the appellant's contention that the stenographer present to relieve the court of this obligation must be an official stenographer, or at least one under the direction and control of the court, so that a copy of the charge could be had if application to the court should be made therefor. It seems to us that this objection is well taken. If the court may refuse to charge in writing when requested merely because one of the parties has employed a private stenographer to report the case on his behalf, then it may do so if it can discover that there is any person reporting the case, no matter for what purpose or on whose behalf. We think the stenographer referred to by the statute must be one who is under the direction of the court, and who can be required to furnish a copy of the instructions when a copy is requested. This is not true of a stenographer employed by one of the parties to the suit to report the case on his own behalf. Such a stenographer is not under the control of the court, nor is he under any obligation, nor can he be required, to furnish a copy of any part of the proceedings, either to the court or the opposing party. His duties are measured by his contract relations with the party who employed him. To say, therefore, merely because there is a stenographer present reporting the case, that the court need not charge in writing, when requested, is to practically annul the statute requiring the court, on request, to charge the jury in writing.

The court, against the objection, and over the exception, of the appellant, limited the time of argument to the jury to one and one-half hours on each side. It is contended here that this was such a manifest abuse of discretion on the part of the court as to entitle the appellant to a new trial. It seems to us that this contention is also well taken. To appear and defend in person and by counsel is a right

guaranteed to one accused of crime by the constitution of
this state, as well as by the Federal constitution, and it is
not to be denied that a part of that right is the right to ad-
dress the jury on the questions of fact the issues present for
determination.   This right, too, has always been regarded
as one of the greatest value, not only to the accused, but to
the due administration of justice, and any limitation of it
which has seemed to deprive the accused of a full and fair
hearing has generally been held error entitling the defendant
to a new trial.   *Williams v. State,* 60 Ga. 367, 27 Am. Rep.
412; *Jones v. Commonwealth,* 87 Va. 63, 12 S. E. 226;
*White v. People,* 90 Ill. 117, 32 Am. Rep. 12; *People v.
Green,* 99 Cal. 564, 34 Pac. 231; *People v. Kennan,* 13 Cal.
581; *Dille v. State,* 34 Ohio St. 617, 32 Am. Rep. 395;
*Hunt v. State,* 49 Ga. 255, 15 Am. Rep. 677; *State v. Rogo-
way* (Ore.), 81 Pac. 234; *State v. Tighe,* 27 Mont. 327,
71 Pac. 3.

In this case the trial consumed something more than four
days.   Over twenty witnesses were examined, and the evi-
dence reported to this court makes a typewritten volume of
nearly 500 pages.   The case was a capital one.   The killing
was done by one of a foreign race, against which the pre-
liminary examination of the jurors disclosed there existed
in the public mind a considerable prejudice.   Under these
circumstances, we are clear that the limitation of one and
one-half hours was too restrictive to allow a full and fair
discussion of the facts of the case, and, hence, was a viola-
tion of the defendant's constitutional rights.

The appellant specially requested the court to instruct the
jury on the law relating to the presumption of innocence.
This the court refused to do, either in the language submitted
with the request, or in its own language.   This was error.
The accused is entitled in every instance to an instruction
on the presumption of his innocence.   The court need not,
of course, give the instruction in the language of the request
unless it so desires; but when requested to instruct as to

the presumption of innocence, it should comply therewith in some form, such as will correctly inform the jury as to the law pertaining thereto. *Coffin v. United States*, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481; 12 Cyc. 621, and cases cited.

The appellant also requested the following instruction:

"Dying declarations are admissible from the necessities of the case, but they should be received with caution, for the reason that the declarant has not been administered an oath, and an opportunity for cross-examination has not been afforded the defendant, and that the declarant might be influenced against the defendant. And for the further reason that the physical condition of the declarant might render the statement more or less unreliable. Circumstances surrounding the declaration should be weighed the same as those surrounding other evidence."

This, or an instruction of similar import, should have been given. *State v. Eddon*, 8 Wash. 292, 36 Pac. 139.

The other instructions requested, and the exceptions taken to those given, require no special notice. In so far as the requests were pertinent, they were embodied in the general instructions given by the court, and no error was committed by the instructions given.

For the errors above set out, however, the case is reversed and a new trial granted.

MOUNT, C. J., HADLEY, DUNBAR, CROW, and ROOT, JJ., concur.