[No. 7181.]

SALAS V. THE PEOPLE.

1. EVIDENCE—*Res Gestae*—One offering a statement made out of court, as part of an act or transaction must establish the preliminaries necessary to show that it is in fact part of such transaction—(463).

One indicted for murder offers to prove a statement touching the affray, made by the deceased some hours after he had received the wound of which he died. There was no evidence of what had transpired during this interval. The statement was *held* narrative merely, and not *res gestae*—(464).

2. DYING DECLARATIONS—*Contradictory Statements of Deceased*—Declarations of the deceased made after he had received the fatal wound, are admissible to impeach his dying declarations. The impossibility of calling his attention to the former statement attributed to him renders the case an exception to the general rule requiring this—(465).

*Error to Bent District Court*—Hon. HENRY HUNTER, Judge.

Mr. H. L. LUBERS and Mr. C. E. SNYDER for plaintiff in error.

Hon. JOHN T. BARNETT, attorney general, Hon. BENJAMIN GRIFFITH, attorney general, Mr. JAMES M. BRINSON, deputy attorney general, and Mr. THEODORE

M. STUART, Jr., assistant attorney general, for the people.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

1. Plaintiff in error, Florencio Salas, was convicted of murder of the first degree for shooting and killing Domingo Balles, and sentenced to life imprisonment in the penitentiary. . People's evidence shows, that on July 24, 1909, deceased was floor manager at a dance in Las Animas; shortly before midnight, Jayo, brother of the defendant, was very abusive and quarrelsome, and started to pick a fight with one Pedro, outside the dance hall; deceased tried quietly to get him to go home, and in so doing, placed his hand on Jayo's shoulder; defendant said: "No son of a bitch can take my brother," and immediately fired, striking deceased in the abdomen; deceased grabbed the gun; in the struggle which ensued, defendant was overpowered by the assistance of others and the. pistol taken from him; deceased went back into the hall, where he received medical attention, and stayed there until the next morning, when he was taken home, and died about four o'clock on the afternoon of the 25th.

Defendant's evidence showed that he was a musician playing for the dance, and going out during the disturbance, found his brother intoxicated, and in a quarrel or fight with Pedro; at deceased's request, he intended to take his brother home; but went back in the hall first, to get a pistol he had secreted there early in the evening; this he put on the inside of his trousers, and while standing by deceased and his brother, deceased put his hand on Jayo's shoulder and asked him to go home; about this time the pistol slipped down the inside of the leg of his trousers, and was coming out at the bottom; he reached down and pulled it out, when deceased grabbed it, and in the

struggle which ensued over its possession, it was accidentally discharged, killing deceased; but that he did not know who did it; in any event, the shot was unintentional.

The People introduced without objection, the dying statement of deceased, in which he said that Jayo and Pedro were fighting outside; that he went out and tried to quiet Jayo, when the defendant said he had something for any son of a bitch what wanted to take his brother, and immediately drew his revolver and shot him; that a scuffle followed over the possession of the weapon.

Defendant offered to prove by witness Taylor, that on the morning of the 25th, witness had a conversation with deceased in the dance hall before he was taken home, in which he said, in the presence of two other witnesses, that Florencio Salas shot him; that there were three or four persons scuffling for the pistol and during the scuffle, it went off, and he was shot. The people objected to this offer on the ground that it was hearsay. The objection was sustained, and to the ruling error is assigned.

Defendant claims the offered testimony was admissible upon two grounds: First, as a part of the *res gestae* of the litigated fact; second, that it was a statement made out of court by the deceased, inconsistent with his dying declaration, and tended to impeach him.

2. The record fails to show the time, also the events transpiring during the interval between the fatal shot and the alleged statement. While these do not determine the competency of a statement made out of court, offered as a part of the *res gestae*, still they should be shown, before the statement is admitted. One offering an oral statement made out of court, as a part of the *res gestae* of a litigated fact, must first prove the things necessary to qualify the statement

as evidence; until this is done, it is hearsay and not *res gestae*. The statement itself is no proof that it is a part of the *res gestae.—State v. Williams*, 108 La. 222; *Bradberry v. State*, 22 Tex. App. 273; *Ford v. State*, 40 Tex. Crim. 280; *Pool v. Warren County*, 123 Ga. 205; *State v. Pugh*, 16 Mont. 345; *Territory v. Armijo*, 7 N. Mex. 436; *Vickery v. State*, 50 Fla. 149.

3. Instinctive, voluntary, spontaneous words, said under the impulse of an event of which they form a part, are not hearsay. They are incident to or a part of the transaction litigated, and admissible in evidence as a part of the *res gestae;* that is, as a part of all the circumstances making up the whole case. In the case at bar, the offered testimony is but a narrative of what had occurred. It and the fatal shooting are distinct, with no connection between them, and the statement is not an incident of the transaction. The court did not err in excluding the statement as a part of the *res gestae.—Graves v. People*, 18 Colo. 170; *Herren v. People*, 28 Colo. 23; *Pueblo Building Co. v. Klein*, 5 Colo. App. 348.

4. The people's evidence, without the dying declaration, showed that when deceased put his hand quietly on Jayo's shoulder and tried to get him to go home, defendant shot him in the abdomen; that deceased grabbed the gun after he was shot, and there was a struggle over the weapon. Deceased's dying declaration is, that when he placed his hand on Jayo's shoulder, defendant, with an ugly remark, instantly shot him, and that the scuffle for the possession of the weapon was after the shooting. Defendant testified, that when he took the pistol from the bottom of his trousers leg, the deceased grabbed it, and during the struggle, it was unintentionally discharged, striking the deceased. There is a sharp conflict in the evidence, whether deceased was shot before the struggle

over the gun, or whether it was unintentionally discharged by someone during the struggle. The offered testimony was, that the deceased, in the dance hall, after the shooting, before he was taken home, and before his dying declaration, in a conversation with witness Taylor, said that there were three or four persons scuffling for the possession of the revolver, and during the scuffle, it went off and shot him. This offered testimony is in conflict with, and tends to impeach the dying declaration of the deceased. The district attorney objected to it upon the ground that it was hearsay, and that the proper foundation had not been laid, and the objection was sustained. In this ruling, the majority of the court are of the opinion that the district court committed reversible error. It was competent for the defendant to introduce evidence tending to show that the deceased had made statements out of court, after he received the mortal wound, inconsistent with his dying declaration. That a dying declaration may be impeached, by showing that the person making it has made other statements inconsistent therewith, is held by the great weight of authority.—*M'Pherson v. State*, 9 Yerg. 279; *People v. Lawrence*, 21 Cal. 368; *Carver v. U. S.*, 164 U. S. 694; *State v. Blackburn*, 80 N. C. 474; *Battle v. State*, '74 Ga. 101; *Morelock v. State*, 90 Tenn. 528; *Green v. State*, 154 Ind. 655; *State v. Mayo*, 42 Wash. 540; *Hurd v. People*, 25 Mich. 405; *State v. Shaffer*, 23 Ore. 555; *Commonwealth v. Silcox*, 161 Pa. St. 484; *McCorquodale v. State*, 54 Tex. Crim. 344; *Dunn v. People*, 172 Ill. 582; Wigmore on Evidence, secs. 1033, 1446.

Such is the opinion of this court upon the admissibility of oral statements made out of court by a deceased person, contradicting or impeaching a dying declaration.

The writer of this opinion, however, does not agree with the opinion of the court on this point, and I will now give my reasons for dissenting.

5. The law is thoroughly established, that evidence cannot be introduced showing that a witness at some other time, when not under oath, made statements out of court inconsistent with his testimony, without first laying the foundation by calling the witness' attention, when on the stand, to the time and place, and circumstances surrounding the making of the alleged statements, and affording an opportunity to contradict or explain the statements on re-examination of the witness. Such evidence is purely hearsay. Its admission is an exception to the general rule excluding hearsay evidence, and before it can be admitted under the exception, the proper foundation, above stated, must be laid.—*Nutter v. O'Donnell,* 6 Colo. 253; *Rose v. Otis,* 18 Colo. 59; *Ryan v. People,* 21 Colo. 119; *Mullen v. McKim,* 22 Colo. 468; *Teller v. Ferguson,* 24 Colo. 432; *Jaynes v. People,* 44 Colo. 535; *Insurance Co. v. Wich,* 8 Colo. App. 409.

The majority opinion does not dispute this principle, but holds, in a dying declaration, there is an exception to it, because death has made it impossible to lay the foundation. I think the law, as well as substantial justice, does not, and should not recognize such an exception; in other words, there is no such exception recognized by the best line of adjudicated cases. The death of the witness does not dispense with the general rule in such cases requiring the foundation to be properly laid.—*Mattox v. U. S.,* 156 U. S. 237; *Ryan v. People,* 21 Colo. 119; *Stacy v. Graham,* 14 N. Y. 492; *Runyan v. Price,* 15 O. St. 1; *Wroe v. State,* 20 O. St. 460; *State v. Taylor,* 56 S. C. 360; *Craft v. Commonwealth,* 81 Ky. 250.

It necessarily follows, if there is no such exception, that such statements, not made under oath, *or in xetremis,* are purely hearsay, and not admissible to impeach a dying declaration.

In the *Mattox case,* 156 U. S. 237, defendant was convicted of murder. On the first trial, a witness by the name of Whitman, testified for the government, claiming to be an eye witness to the shooting. At the second trial, he having died in the meantime, a transcribed copy of the stenographic notes of his testimony, was read by the government to the jury. For the purpose of impeaching this evidence, defendant offered to show, that after the first trial Whitman said his testimony was false; that he did not witness the shooting; and told why he testified falsely. The district attorney objected to this offered testimony because the proper foundation had not been laid, and an opportunity to explain or contradict it had been cut off by the death of Whitman. The objection was sustained and error assigned thereon. After the case had been submitted, counsel were allowed to file further briefs upon the question of the admissibility of this offered evidence, and the case was re-submitted to the full bench. It was insisted that the rule did not apply, because Whitman was dead and the alleged contradictory statements were made subsequent to the giving of his testimony at the first trial, and consequently no foundation could be laid. The court held that the authorities recognized no such distinction or exception. The case decides that the fact that a witness cannot be produced, because he is dead, does not dispense with the necessity of laying the proper foundation before his evidence can be impeached. The opinion of the court is summed up in this forceful language:

"While the enforcement of the rule, in case of the death of the witness subsequent to his examination, may work an occasional hardship by depriving the party of the opportunity of proving the contradictory statements, a relaxation of the rule in such cases would offer a temptation to perjury, and the fabrication of testimony, which, in criminal cases especially, would be almost irresistible. If it were generally understood that the death of a witness opened the door to the opposite party to prove that he had made statements conflicting with his testimony, the history of criminal trials leads one to believe that witnesses would be forthcoming with painful frequency to make the desired proof. The fact that one party has lost the power of contradicting his adversary's witness is really no greater hardship to him than the fact that his adversary has lost the opportunity of recalling his witness and explaining his testimony would be to him. There is quite as much danger of doing injustice to one party by admitting such testimony as to the other by excluding it. The respective advantages and disadvantages of a relaxation of the rule are so problematical that courts have, with great uniformity, refused to recognize the exception."

In the *Ryan case*, 21 Colo. 119, the people took and read to the jury the deposition of a witness named Dulin. Defendant offered to show that Dulin, since it was taken, made statements out of court contradicting his deposition. The offer was rejected upon the ground that the proper foundation had not been laid. Defendant claimed it was impossible to lay the foundation because the statement was made after the deposition was taken. We then said that the law recognized no such exception, and that the courts with great unanimity declared that a witness could not be so impeached, without first laying the foundation. I

quote `from the opinion to show that we were then in full harmony with the *Mattox case:*

"The opinion in *Mattox v. United States, supra,* contains an able and exhaustive review of the authorities upon the question. The exception there and here claimed was held to have been rightfully denied in that case, although the defendant was upon trial for a capital offense, which trial resulted in his conviction and sentence. We fully concur with the reasoning of the majority of the court in that case, and hold in this case that the evidence of the witnesses Coryell and Masterson, sought to be introduced for the purpose of showing that the witness Dulin had made statements out of court contradicting or differing from his deposition, was properly rejected, as no foundation had been laid for the introduction of such evidence."— *Ryan v. People,* 21 Colo. 126.

It is difficult to reconcile the *Mattox case* with *Carver v. U. S.,* 164 U. S. 694. The only attempt of the court to do so is by the statement:

"That case (*Mattox case*), however, was put upon the ground that the witness had once been examined and cross-examined upon a former trial."

In the *Mattox case,* it should be remembered, Whitman was dead when his evidence was read at the second trial. The alleged statements were made after the first trial. He could not have been cross-examined upon them at the first trial, because they had not been made then. If the court in the *Carver case* had explained how the defendant in the *Mattox case,* could by cross-examination of the witness Whitman on the first trial, lay the foundation for impeaching him on account of contradictory statements by him after the first trial, I might understand how to distinguish the two cases. On the point involved, I think the two cases are practically the same, and cannot be distinguished in principle. We have gone on record in the

*Ryan case,* upholding the doctrine announced in the *Mattox case,* and I do not think we should change the law there announced. I think the language of the supreme court of South Carolina very appropriate:

"Counsel for appellant has cited the case of *Carver v. United States,* 164 U. S. 694, in support of his contention that the testimony in question was competent for the purpose of contradicting and impeaching the statements made by the deceased in her dying declarations, and that case does so hold. But it seems to us, in principle, the case is irreconcilable with the previous case of *Mattox v. United States,* 156 U. S. 237, which, while not a case of an attempt to impeach dying declarations, the whole subject was fully and elaborately considered—much more so than in the case of Carver. In both of these cases the court was divided, and we are not prepared to accept either as binding authority upon us, in a case of this character, where no federal question is involved. On the contrary, it seems to us that the conclusion reached by the Ohio court, in *Wroe v. State, supra,* is more in accordance with reason than the contrary conclusion. To hold that it is competent to impeach the dying declarations of a deceased person by testimony tending to show that she had made statements in conflict with those contained in her dying declarations, not under the sanction of an oath nor under the shadow of impending death, would tend not only to afford a strong temptation to the fabrication of false testimony to save the life of the accused, when death had rendered it impossible to rebut or explain such statements, but would also tend to absolutely destroy the efficiency of dying declarations as evidence. We do not think, therefore, that such testimony is competent."—*State v. Taylor,* 56 S. C. 368.

The offered testimony is not a dying declaration, nor a part of the *res gestae*. It is a dangerous kind of hearsay, and its admission, when the proper foundation has been laid, is an exception to the rule regarding hearsay evidence. The death of the witness does not create an exception to the exception. To admit it, without a proper foundation, on account of the death of the witness, would deprive the people of the opportunity to deny or explain, without any equivalent for the loss sustained. An exception to a general rule should never be created where it would simply shift the hardship from one party to another. If established, an impeaching witness could, with impunity, swear to any statement whatever, without fear of contradiction. Those with long practical experience in criminal trials, know that to recognize such an exception, will invite corruption, fraud, perjury and subornation of perjury in our courts. The cases cited sustaining the doctrine, present a striking example of the growth of an erroneous principle from the misconception or misapplication of some early case. The two cases universally quoted as foundational cases, are *M'Pherson v. State,* 9 Yerg. (Tenn.) 279, and *People v. Lawrence,* 21 Cal. 369. Every case and text I have been able to examine, sustaining this doctrine, is either based on these two cases, or on other cases based on them. I think it can be shown that these two cases are no authority for the doctrine, and that the decisions purporting to rest thereon, have misconstrued or misapplied them and are founded on a false basis.

In *Murdock v. State,* 90 Tenn. 529, the supreme court of that state, speaking of the *M'Pherson case* in 9 Yerg. says:

"But in that case, all the statements were made *in extremis,* and were clearly admissible as dying

declarations." The case turned wholly on conflicting statements in the dying declaration itself. The point under consideration in the case at bar, did not enter into that case in any way, and it is no authority for the contention.

In the *Lawrence case,* 21 Cal. 368, is the following statement of fact:

"After the evidence for the prosecution had closed, the defendant offered to prove that the deceased, after the shooting and at the primary examination of the defendant before the committing magistrate, swore to facts directly contradicting his dying declarations. The court refused to admit the evidence, and the defendant excepted."

It appears in this case, that after the shooting, probably before it was anticipated that the deceased would die from his wounds, there was a preliminary examination of the defendant at which the prosecuting witness was sworn and testified. He died sometime after this, and made a dying declaration regarding the shooting, which was admitted in evidence against the defendant on his final trial for murder. There was a material conflict between his dying declaration, and his sworn evidence at the preliminary, and this evidence was offered for the purpose of impeaching his dying declaration. Under the circumstances of that case, his evidence at the preliminary was competent evidence at the final trial. It is universally held where a witness has been duly sworn and examined in court and an opportunity offered for cross-examination, that upon a subsequent trial of the same transaction between the same parties, if the witness is beyond the jurisdiction of the court and cannot be produced, that his evidence at the former trial may be read to the jury. Either party may use it. Not only this, the alleged contradictory state-

ments were evidence given under oath, in a court proceeding between the same parties with all the right and opportunity of cross-examination. The case is no authority for allowing one, after the opportunity for contradiction or explanation had been cut off by death, to come into court and testify to an alleged oral conversation had with a deceased witness out of court for the purpose of. impeaching his evidence. I do not think that purported oral hearsay statements made out of court, not made under oath and not *in extremis* should be admitted for the purpose of impeaching a dying declaration.

Reversed and remanded for a new trial.

*Reversed.*

Decision *en banc.*

Mr. JUSTICE GARRIGUES dissents.

CHIEF JUSTICE CAMPBELL not participating.