No. 8795.

DENVER & RIO GRANDE RAILROAD CO. *v.* WRIGHT.

1. RAILWAYS—*Fencing Act Construed.* Under sec. 10 of chapter 135 of the Laws of 1911 the owner of an animal killed upon the tracks of a railway is not required to file a claim with the station agent, until nor unless the railway company has complied with the provisions of secs. 5-9, which are conditions precedent, imposed upon the railway company.

And in such case the six months' limitation contained in section 11 does not avail the company.

2. EVIDENCE—*Presumptions.* In an action for the value of live stock killed upon the uninclosed tracks of a railway, at a point where inclosure is required, it will be presumed, nothing appearing to the contrary, that the animals came upon the track at the point where they were killed.

3. APPEALS AND ERROR—*Harmless Error.* The improper admission of a memorandum book containing only this same matter testified of by the keeper of the book, is harmless.

*Error to Chaffee District Court, Hon. Charles A. Wilkin, Judge.*

Mr. E. N. CLARK, Mr. R. G. LUCAS, Mr. T. M. STUART, JR., for plaintiff in error.

Mr. H. L. McGINNIS, Mr. G. K. HARTENSTEIN, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

1. This suit is brought under sections 1, 2, 3 and 4 of the railroad fencing act, S. L. 1911, p. 400, to recover the value of stock killed on the railroad. The basis of the action is negligence on account of failing to fence the rail-

road, and no recovery can be had which is not founded upon such negligence.

Section 1, requires every railway company to fence its railroad, and to construct and maintain good and sufficient cattle guards at public crossings, for the protection of livestock, amply sufficient to prevent it from getting on the railroad, except within the limits of incorporated towns and cities, or the yard limits of established stations, or at public road and highway crossings.

Section 2 makes every railway company failing to en close its railroad with such fences and guards, absolutely liable for all livestock running at large, killed on the railroad by the engines or cars of the company.

Section 3 provides if the railroad is enclosed with good and sufficient fences, and guards capable of keeping animals off the railroad, the company may plead and prove the same as a defense for any animals killed within the enclosure.

Section 4 makes the killing of any animal by coming in contact with any engines or cars, *prima facie* evidence of negligence, and the company liable for the full value of any animal so killed, unless it shall affirmatively show that the killing was not caused by its negligence.

Plaintiff alleges that the animals were killed by the engines and cars, upon an unfenced portion of the railroad at a point where the road was required to be fenced, and that the killing was due to, and resulted from a failure of the company to enclose its railroad at the point where the animals were killed.

The evidence shows that the animals were killed by coming in contact with a train on the railroad, at a point where the same was not enclosed, and where the law required an enclosure. The road was unfenced and there was no enclosure where the animals were killed. This established proof of absolute liability, until the company showed that the road was enclosed as required by law or that the killing was at a point where no enclosure was required. The company offered no pleading or proof to establish

either, or that the killing was not caused by its negligence. It denied the allegations of the complaint, and pleaded two affirmative defenses: One, The six months statute of limitations based on sections 10 and 11 of the act; and the other that plaintiff had not complied with secions 8 and 9 by declining to accept the estimated value of the animals or to arbitrate. These affirmative defenses are laid upon the following sections of the act:

Section 5, provides that the engineer killing an animal on the railroad shall notify the company, and that it shall notify the section foreman, and the nearest livestock inspector, and they shall go to the point where the animal was killed, and inspect it, and determine the ownership. The stock inspector must also estimate the probable value of the animal.

Section 6 makes it the duty of the inspector immediately to send a full report of his inspection to the Secretary of the State Board of Inspection Commissioners, showing all the facts, and his estimated value of the animal and the foreman is required to send a similar report to the claim agent.

Section 7 provides that the secretary, upon the receipt of such report from the inspector, shall notify the owner of the facts, and of the inspector's estimated value of the animal, and shall also send a copy of the inspector's report to the company.

Section 8 requires the owner within 30 days after he has received the report from the secretary, to make proof of ownership and deliver it to the secretary, who shall then notify the company and demand that it pay to the board the estimated value for the benefit of the owner, which, if accepted, shall constitute final settlement. But if the owner is dissatisfied with the estimated value, and is willing to arbitrate, he may file a claim with the board, in such sum as he thinks justly due him.

Section 9 provides that the parties may then arbitrate such claim before the board, and if they do, its finding shall be final.

Section 10 provides in the event the owner, after being

notified by the secretary, declines to accept the estimated value or to arbitrate as provided in sections 8 and 9, that he must, within six months from the date of the killing, file sworn proof and affidavit with the station agent, and if he fails to do so, the claim for damages is forever barred.

Section 11 provides if the company fails for 30 days after the owner has filed such demand, to pay the actual value of the animal, the owner may, within six months from the date of filing such sworn proof and affidavit of claim, sue and recover the actual market value of the animal, with legal interest thereon from the date the animal was killed.

2. There is no evidence that the railway company complied with the conditions precedent which required the owner to be notified by the secretary and given an opportunity to accept, arbitrate or decline as provided in sections 8 and 9. The provisions of sections 5, 6, 7, 8 and 9, are conditions to be complied with precedent to the owner being required to file a claim with the station agent as required in section 10. It is too plain to admit of discussion that it is only in the event the owner declines to accept or arbitrate, that he is required to file such claim. Plaintiff was given no opportunity to decline; therefore he was not required to file sworn proof and affidavit with the station agent.

The six months statute of limitations is unavailing to defendant, because it did not comply with the law relating to the killing of stock, setting sections 10 and 11 in operation and making them effective as to plaintiff. There is no pleading, proof or claim that the company complied with such conditions. Plaintiff's voluntary act in filing such claim with the station agent before bringing suit was unnecessary; merely gratuitous and fixed no limitation upon his right to sue and recover the full value under sections 1, 2, 3 and 4. We have held that a compliance with the act was a necessary condition precedent to putting sections 10 and 11 into operation.

*C. R. I. & P. Ry. Co. v. Eyster,* 63 Colo. 109, 111.

We cannot allow admissions of counsel to control as to the construction of an act of the legislature. The foundation of the suit is not a failure to pay a demand filed with the station agent. The action is based upon negligence for failure to fence the railroad at a point where it was required to be enclosed. The complaint pleads the ultimate facts constituting such negligence, which is clearly established by the evidence. Defendant makes no attempt by pleading or proof to overcome this liability by showing that the railroad was enclosed or that the stock got on the track at places where the company was not required to fence, or to exonerate the company in any way from negligence. At the points where the animals were killed, the road was required to be enclosed and in the absence of evidence to the contrary, it will be presumed these points were the points where they came upon the railroad.

33 Cyc., p. 1281 (c).

3. But if we concede, for the sake of the argument that the owner by filing his claim with the station agent waived the conditions precedent and voluntarily brought himself within the provisions of sections 10 and 11, defendant is in no better position because the suit was brought within six months from the date of filing such claim.

4. Defendant claims that portion of the statute allowing legal interest on the claim from the date the animal was killed, is unconstitutional. If that be conceded, which it is not, it makes no difference. The jury allowed plaintiff no interest.

5. The evidence showed that the section foreman found the dead animals along the side of the track, skinned them and burned the carcasses as required by law, and sent a report of his acts to the claim agent. Plaintiff procured an order from the court allowing him to inspect these records, and the company, under protest, produced them in open court on the trial, in response to such order. The deposition of the section foreman was taken by plaintiff and read in evidence, in which he testified both upon direct and cross examination, to finding the dead animals

along the track at places where the road was required to be fenced, and was unfenced; and that the marks and bruises upon them, hair upon the ties and marks in the snow and upon the banks and ground, showed that the animals had been killed by coming in contact with a train. The evidence was conclusive that the animals were killed by engines or cars, upon the unfenced portion of the railroad where it was required to be fenced. In connection with the section foreman's deposition read to the jury, plaintiff was allowed to introduce in evidence these reports made by him to the claim agent, and apparently some kind of a book kept by the section foreman, to the admission of which error is assigned. Plaintiff claims that these were properly admitted as a part of the *res gestae,* in which we do not concur.

*Salas v. People,* 51 Colo. 461-464, 118 Pac. 992, 37 L. R. A. (N. S.) 252.

The book was not preserved in the record or bill of exceptions, it is not before us and we have no way of knowing its contents. Conceding, but not deciding, that it was error to admit in evidence these section foreman reports, the error was harmless, because he testified orally upon direct and cross examination to all the matters contained in the written documents, and the evidence shows so conclusively that the animals were killed by coming in contact with trains on the unfenced portion of defendant's railroad, where the law required it to be fenced, and about which there is no controversy, that the error, if any, was harmless.

Judgment affirmed.

*Affirmed.*

Decision *en banc.*

Mr. Justice Scott not participating.